## Watson v.
## Aluminum Extruded Shapes
*[Cite as 5 AOA 19]*

*Case No. C-890341*
*Hamilton County, (1st)*
*Decided July 3, 1990*

*Richard E. Reverman, Esq., 1014 Vine Street, Suite 2400, Cincinnati, Ohio 45202, for Plaintiff-Appellant.*

*James E. Davidson, Esq., 41 South High Street, Columbus, Ohio 43215, and Bernard C. Fox, Jr., Esq., 800 American Building, 30 East Central Parkway, Cincinnati, Ohio 45202, for Defendant-Appellee.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the briefs, and the assignment of error, oral argument having been waived.

Plaintiff-appellant, Kenneth Roy Watson, Jr., appeals from the trial court's order granting summary judgment in favor of his employer, Aluminum Extruded Shapes (Aluminum), as to his claim for personal injuries allegedly caused by the employer's intentional tort. In his single assignment of error plaintiff contends that, contrary to Civ. R. 56, the trial court erroneously granted his employer's motion for summary judgment despite the existence of genuine issues of material fact relating to whether Aluminum's conduct was intentional. We agree.

Plaintiff was employed by Aluminum as a punch press operator-packer. On March 10, 1986, while working on a punch press, his thumb was amputated as he tried to remove a piece of metal on which he was working after it became jammed in the press. He maintains that the injury was substantially certain to occur because the front safety guard was not on the punch press, thereby allowing it to activate as he attempted to free the metal.

Since plaintiff's claim arose before the effective date of R.C. 4121.80(G)(1), the common-law definition of intentional tort in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69

Ohio St. 2d 608, 433 N.E.2d 572 certiorari denied (1982) U.S. 857, 103 S. Ct. 127 and its progeny, rather than the statute, determine whether the affidavits, depositions, and exhibits submitted by plaintiff in opposition to his employer's motion for summary judgment established a prima facie case. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 106, 522 N.E.2d 489, 496. In paragraphs five and six of the syllabus of Van Fossen, the Supreme Court substantially adopted the definition of "intentional tort" used in 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A, which provides that an intentional tort is committed when "*** the actor desires to cause the consequences of his act, or *** he believes that the consequences are substantially certain to result from it." This definition recognizes two distinct levels of intent. The first is where the actor's conduct produces the exact result desired. The second is where the actor believes his conduct is substantially certain to cause a particular result even if he does not desire that result. See *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St. 3d 173, 175, 551 N.E.2d 962, 964.

The case *sub judice* comes within the second category of intent. To establish a prima facie case of an employer's intentional tort against its employee, the Supreme Court announced in *Van Fossen, supra,* at 117, 522 N.E.2d at 504, that it was "significantly limiting the areas within which 'intent' on the part of the actor may be circumstantially *inferred,*" and thereby restricted its earlier interpretation in *Jones v. VIP Development Co.* (1984), 15 Ohio St. 3d 90, 472 N.E.2d 1046. Consequently, *Van Fossen,* within the purview of 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A, and Prosser & Keeton on Torts (5 Ed. 1984) Section 8, engrafted to the rule the following test as a predicate to proof of intent:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation;

"(2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment tasks."

Our review of Ohio Supreme Court cases following *Van Fossen* suggests that, even after adoption of this three-tier test, the instance in which the employee sustains an injury because the employer deliberately removed a safety guard from power equipment falls into a factually unique category. At the outset, under one of the companion cases decided with *Jones, supra,* at 96, 472 N.E.2d at 1052, "substantial certainty" was determined to be an issue for the jury if an employer deliberately removed a safety guard with knowledge that its purpose was intended to protect employees from injury. When the legislature subsequently reacted and provided a more restrictive definition of "substantially certain" in R.C. 4141.80(G) (1), which now means "deliberate intent" to cause injury, it, nevertheless, created a presumption of intent when there is "[d]eliberate removal by the employer of an equipment safety guard." Accordingly, the critical issue is whether *Van Fossen* in the interim imposes a stricter standard for proof of the employer's intent than the more liberal interpretation in *Jones* or the legislature's subjective and "more difficult statutory restriction." See *Van Fossen, supra,* at 109, 522 N.E.2d at 498.

We find that the judicially created three-tier test of *Van Fossen* was not intended to establish a stricter standard of proof than the statute in cases where an equipment safety guard is deliberately removed. The Supreme Court so concluded, we believe, when it said, "R.C. 4121.80(G)(1) would remove [plaintiff's] viable court enunciated cause of action by imposing a new more difficult statutory restriction." *Id.,* at 109, 522 N.E.2d at 498. This observation in *Van Fossen,* which is itself one case in the evolutionary network of the "court enunciated cause of action," by implication suggests that its standards do not exceed what it referred to in *Harasyn v. Normandy Metals, Inc.,* supra, as the state's policy expressed in the statute.

Since the proof required to establish an employer's intent usually depends upon circumstantial evidence, direct evidence of the employer's removal of the safety guard on equipment that the employee was assigned to operate automatically triggers inferences which will satisfy *Van Fossen's* three-tier test for purposes of Civ. R. 56.[1] The exception is when the employee, despite the missing safety guard, knowingly acts in contradiction of the employer's safety protocol. In that instance, the Supreme Court has concluded that the employer cannot be expected to anticipate the employee's misconduct under

the second category of the three-tier test. See *Sanek v. Duracote Corp.* (1989), 43 Ohio St. 3d 169, 539 N.E. 2d 1114.

Aluminum did not offer evidence to contradict plaintiff's allegation that the punch press was originally equipped with a safety guard which had been removed at the time of the injury. In opposition to the motion for summary judgment, plaintiff offered affidavits of Duke Crane, a co-worker, and Gerald C. Rennel, a safety engineer. Crane stated that plaintiff's supervisor, who assigned him to work on the punch press, was responsible to see that the press was in operating condition and should have known that the safety guard was unattached at the time of plaintiff's injury. Crane further stated that, immediately after plaintiff 's injury, he saw the supervisor "attempting to put the guards back on the punch press." On previous occasions Crane said that he observed the punch press operated by other employees without the safety guard. Plaintiff's expert stated that "point of operation guarding" on power presses has existed for more than fifty years and is required "by Ohio regulations, Federal, OSHA, American National Standards Institute and the National Safety Council." He expressed the opinion that an injury is "virtually certain" if an employee operates a hand-fed, foot-operated, unguarded punch press.

In our review of the summary judgment granted by the trial court, the plaintiff is entitled to have the evidence and inferences from the facts contained in the deposition, affidavits and exhibits construed in his favor. When the evidence is so construed, the motion must be overruled if reasonable minds can come to more than one conclusion as to whether injury was substantially certain. See *Kunkler v. Goodyear Tire & Rubber Co.* (1988) , 36 Ohio St. 3d 135, 138, 522 N.E.2d 477, 480-81. Although Aluminum contradicted plaintiff's evidence in part, we find that the trier of facts, applying either the *Van Fossen* standards or the presumption of R.C. 4121.80(G)(1), could reasonably infer from the statements in the affidavits that Aluminum knew that the consequences were substantially certain to result from removal of the safety guard, but went ahead and assigned plaintiff to work on the unguarded punch press. See 1 Restatement of the Law 2d, Torts (1965), 15 Comment b to Section 8A; *Kunkler v. Goodyear Tire & Rubber Co.*, supra, at 139, 522 N.E.2d at 481. Therefore, the trial court erroneously granted Aluminum's motion for summary judgment, and we reaffirm our decision in *Kaaz v. Louvers and*

*Dampers, Inc.* (June 1, 1988), Hamilton App. No. C-870589, unreported.

For the reasons given, the judgment of the Hamilton County Court of Common Pleas is reversed and this case is remanded for further proceedings according to law.

*Judgment reversed and*
*cause remanded.*

SHANNON, P.J., HILDEBRANDT and GORMAN, J.J.

---

[1] Our interpretation of the Ohio case law does not extend to removal of a safety device during a process unrelated to the operation of machinery.