ROBINSON, Admr., Appellant,

v.

ICARUS INDUSTRIAL CONSTRUCTING AND
PAINTING COMPANY, INC., Appellee.

[Cite as *Robinson v. Icarus Indus. Constructing &*
*Painting Co.* (2001), 145 Ohio App.3d 256.]

Court of Appeals of Ohio,
Third District, Defiance County.

No. 4–01–05.

Decided Aug. 15, 2001.

*Patricia Horner,* for appellant.

*Corey Crognale,* for appellee.

WALTERS, Presiding Judge.

This appeal arises from a decision by the Common Pleas Court of Defiance County to enter summary judgment against plaintiff-appellant, Mark A. Robinson, administrator of the estate of Ronald Ours. Finding no merit to the arguments advanced on appeal, we affirm the judgment of the trial court.

In May 1994, the Ohio Department of Transportation ("ODOT") awarded appellee, Icarus Industrial Constructing and Painting Company ("Icarus"), a contract to paint five bridges within several counties of the state. After the four largest bridges were completed, work began on the final bridge located in Defiance County, Ohio, on State Route 18. The necessary work included surface preparation through abrasive blasting, followed by several coats of paint. Each

bridge utilized the same techniques, and the first four were completed without incident.

Before work began on the final bridge, Icarus's representatives met with ODOT officials to address safety issues and the proper equipment necessary to complete the work. After inspection, Icarus's owner, Stelios Tsahas, and the worksite foreman decided to use painter's picks scaffolding to enable the workman easier access to the bridge. The painter's picks were twenty-eight inches wide and were suspended from horizontal parallel cables fastened to the bridge, which allowed for lateral movement. Because the workers would be thirty feet above the ground, safety harnesses and lanyards were provided as protection against falls. The lanyards were to be tied off to a safety line that was connected to the bridge. Additionally, for environmental protection, the painter's picks were surrounded by tarpaulins, which concealed the workers from any ground crew.

Ronald Ours had been working for Icarus twelve years prior to beginning work on this project. Throughout that time, Icarus maintained a safety awareness and training program of which all employees were required to participate. Mandatory training sessions were held each Monday, and shorter "toolbox" safety meetings were held on a daily basis. These included training specifically on the use of fall prevention equipment. By implementing such a program and by utilizing safety harnesses and lanyards, no injuries had occurred due to falls throughout the fifteen years of Icarus's operation before the day that gave rise to this action.

Ronald Ours was an experienced commercial painter and was a member of the Brotherhood of Painters and Allied Trades, Local 460. Not only was he well trained in using the fall protection issued to him, he also signed Icarus's mission statement, which recognized the safety procedures and his obligation to follow them. Notably, Ours apparently understood this commitment because he was consistently observed wearing the provided safety harness and lanyard.

Despite this understanding, on September 12, 1994, Ours was not wearing his issued safety equipment, and he fell from the scaffolding thirty feet to his death. Following his death, the administrator of his estate, Mark Robinson ("appellant"), brought this action claiming that Icarus caused the wrongful death of Ronald Ours through an intentional workplace tort. Thus, appellant asserts that the intentional acts and dangerous conditions brought about by Icarus created a substantial certainty of harm to Ours.

In a judgment entry dated December 15, 2000, the trial court granted Icarus's motion for summary judgment. Upon entering this judgment, appellant filed his appeal, asserting, in two separate assignments of error, that the trial court erred

in granting summary judgment. Because the two assignments of error are sufficiently related, they will be discussed together.

## Assignment of Error I

"The trial court failed to construe the evidence and all available inferences in a light most favorable to the plaintiff."

## Assignment of Error II

"The trial court erred in granting defendant's motion for summary judgment."

■ The standard of appellate review for a summary judgment is *de novo;* thus, our decision is made without deference to any prior trial court ruling.[1] A summary judgment determination is appropriate only when there is a showing that no genuine issues of material fact exist, and reasonable minds could only come to the conclusion that based on the facts presented the moving party is entitled to judgment as a matter of law even with all evidence construed most strongly in the nonmoving party's favor.[2]

■ In order to overcome summary judgment in favor of an employer for an intentional tort action, the appellant-employee must exhibit " 'specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee.' "[3] To establish the requisite "intent" for an intentional tort against an employer, the employee must demonstrate the following: (1) the employer had knowledge of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) the employer had knowledge that if the employee is subjected by his employment to such danger then harm to the employee will be a substantial certainty; and (3) that the employer, with such knowledge and under such circumstances, did act to require the employee to continue to perform the dangerous task.[4]

■ Furthermore, the proof needed to establish a workplace intentional tort must be beyond that which is required to prove negligence and recklessness.[5] In other words,

---

1. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317, 320.

2. Civ.R. 56(C); *Gray v. Continental Alloy Steel Corp.* (1990), 70 Ohio App.3d 425, 429, 591 N.E.2d 359, 361.

3. *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 119, 570 N.E.2d 1108, 1112–1113, quoting *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 504–505.

4. *Id.,* 59 Ohio St.3d at 118, 570 N.E.2d at 1112.

5. *Id.* at 118, 570 N.E.2d at 1112.

"Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent."[6]

The overarching issue of this appeal is whether an employee or his representative can sue his employer for an intentional tort arising from injuries sustained while on the job when provided with safety equipment and training to preclude such harms. By construing all facts within the record in a light most favorable to appellant, we find that reasonable minds would not differ concerning whether an intentional tort was committed. All the facts point to but one conclusion: Icarus's actions or lack thereof do not meet the requirements for an intentional workplace tort.

The first two elements of the *Fyffe* standard rely on the same facts in this case and will be discussed together. Based upon the evidence within the record neither is satisfied. The business that Icarus is engaged in carries with it inherent danger. But such danger is sufficiently negated for the purposes of this claim by implementing satisfactory safety guidelines and equipment. Undisputed evidence reveals that Icarus's employees were required to attend weekly scheduled safety meetings, which included fall prevention issues, in conjunction with daily meetings that had an emphasis on safety. Furthermore, steps were taken by Tsahas and Icarus's foreman to make sure that the worksite was safe, including meeting with ODOT representatives to discuss what measures should be taken to ensure the safety of their employees.

Appellant contends that a lack of guardrails on the scaffolding buttresses the notion that Icarus knew that there was a dangerous condition at the worksite and that harm would be substantially certain to occur. Even if we assume that appellant is correct and that guardrails were required, this does not dismiss the fact that safety harnesses and lanyards were issued to every employee. The evidence demonstrates that Ours was consistently observed in the past using such safety equipment, but that he was not wearing his issued equipment at the time of his fatal fall. Moreover, the evidence demonstrates that Ours was highly experienced at this type of work, with twelve years' experience at Icarus, that he was a long-time member of the Brotherhood of Painters and Allied Trades, Local

---

6. *Id.*

460, and that he had signed Icarus's mission statement, which acknowledged his commitment to following the implemented safety guidelines. Ronald Ours did not fall to his death because there was a lack of guardrails; instead, his death was the result of not following the safety measures already in place and for which he had consistently abided by in the past. An employer simply cannot be held to know that a dangerous condition exists and that harm is substantially certain to occur when he has taken measures that would have prevented the injury altogether had they been followed.

In cases analogous to this, courts have held that when safety devices or rules are available but are ignored by employees, the requisite knowledge of the employer is not established. For example, the Franklin County Court of Appeals reasoned that even if an employer knew that employees did not always wear the safety equipment provided, the employer could possibly be negligent or reckless but that that would not rise to the level of a substantial certainty.[7] And simply because other methods could have been utilized to protect an employee, such as guardrails in the case at hand, given the availability of adequate alternate safety devices it cannot be said that the employer knew with a substantial certainty that an employee would be injured.[8]

Likewise, the Seventh District Court of Appeals of Ohio held that when an employer takes various precautionary measures to ensure the safety of his employees, the employees would be precluded from raising an intentional tort claim when the safety measures were not followed.[9] That case involved the painting of a bridge, similar to the work involved here. The precautions taken included discussions about safety with the Delaware River Port Authority prior to beginning work, daily mandatory meetings with the workers concerning safety, and the employer hired only experienced painters.[10] As noted above, Icarus utilized these same types of precautions, which "cannot be expected to protect an employee who disregards them."[11]

Appellant raises an issue concerning Occupational Safety and Health Administration ("OSHA") violations received by Icarus. According to the record, Icarus's worksites have previously been in violation of OSHA regulations. Appellant

---

7. *Foust v. Magnum Restaurants, Inc.* (1994), 97 Ohio App.3d 451, 456, 646 N.E.2d 1150, 1153–1154.

8. *Id.*

9. *Hutton v. Corcon Indus. Painting, Inc.* (Mar. 29, 1993), Mahoning App. No. 92CA41, unreported, 1993 WL 102909.

10. *Id.*

11. *Id.*

contends that these infractions provided Icarus with knowledge of dangerous conditions, and, in turn, knowledge to a substantial certainty that harm would occur.

The record documents citations for three different worksites prior to the site in question, those being in 1991, 1993, and July 1994. The circumstances of the 1993 and July 1994 citations are not analogous to those of the case herein because in those situations the employees were using safety lines; however, the citations were issued because the employees had not tied them off to a proper structure according to OSHA regulations. The 1991 instance is more analogous since the citation was issued because fall protection equipment was not used. Despite this, no inference can be drawn that a 1991 citation would give this employer knowledge to a substantial certainty that a dangerous condition existed or that harm would occur at the time of Ours's death in September 1994 at a completely different worksite. This is especially true given that the behavior cited in 1991 was promptly abated.

There is also documentation concerning OSHA citations issued for the worksite where Ours lost his life. One of these was issued as a willful violation upon the part of Icarus for not utilizing guardrails and not providing its employees with fall protection; the penalty initially assessed was $42,000. But upon further review by OSHA, the penalty was reduced to $2,000, and the citation was recharacterized as an unclassified violation. Moreover, OSHA had conducted two random inspections of the bridge project before Ours's death, which resulted in no citations being issued. In light of this and the other evidence provided herein, nothing suggests that appellee had knowledge that a dangerous condition existed or that harm was substantially certain to occur.

The record is also devoid of any evidence that Icarus meets the criteria for the third element of the *Fyffe* standard. The undisputed evidence clearly shows that Icarus did not require Ours to continue the dangerous task he was involved in, working without a safety harness and lanyard. In fact, all the evidence points to the contrary. Icarus provided safety instruction, which Ours clearly understood, as evidenced by his consistent past use of a safety harness and lanyard. And Icarus provided each employee with the type of safety equipment that would have, if utilized, prevented the fatal injuries.

■ We recognize that an employer does not have to expressly order an employee to participate in a dangerous activity. And this element can be satisfied merely "by presenting evidence that raises an inference that the employer, through its actions and policies, required the decedent to engage in that dangerous task."[12] The facts herein, however, are undisputed that Ours was

---

**12.** *Hannah v. Dayton Power & Light* (1998), 82 Ohio St.3d 482, 487, 696 N.E.2d 1044, 1047–1048; *Gibson v. Drainage Products, Inc.* (Mar. 2, 2001), Paulding App. No. 11–99–14, unreported, 2001 WL 207016.

never expressly or implicitly directed to work without using his safety equipment. And in light of all the evidence presented, we find that appellant has failed to raise any contrary inference.

Additionally, we recognize that this court has previously found that in order to meet the *Fyffe* standard's third prong, the injured employee must have been compelled, as a condition of employment, to engage in the dangerous task.[13] Nothing in the record suggests that employment with Icarus was conditioned upon not using issued safety equipment. An employer would not require attendance at safety meetings when its true intention is to have its employees disregard the information provided. Along the same lines, there is nothing from which we can infer that this employer issued safety equipment with the intent that the employees would ignore its use. Thus, while we are not unmindful of the tragic results of this accident, we find that only one conclusion is possible: Ours placed himself in danger by choice and not as a requirement of his employment.

The Supreme Court has indicated that a stringent standard is necessary for these claims in order to avoid undermining workers' compensation laws. Those laws were put in place to give employees a greater assurance of recovery from their employers, and, at the same time, to relieve employers from unlimited liability.[14] Ronald Ours's expenses surrounding his death were covered by workers' compensation. Based on the record, this decision not only comports with the facts presented but also supports the underlying policy reasons for workers' compensation.

For the above-stated reasons, we hold that the trial court did not err in granting Icarus's motion for summary judgment. Accordingly, appellant's assignments of error are not well taken and are overruled. Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, J., concurs.

SHAW, J., concurs in judgment only.

---

13. *Gibson v. Drainage Products, Inc.* (Mar. 2, 2001), Paulding App. No. 11–99–14, unreported, 2001 WL 207016; *Myers v. Oberlin Processing, Inc.* (Sept. 27, 1996), Seneca App. No. 13–96–20, unreported, 1996 WL 547920, appeal not allowed in (1997), 77 Ohio St.3d 1547, 674 N.E.2d 1186; *Paxton v. Hench* (July 22, 1992), Allen App. No. 1–92–36, unreported, 1992 WL 180095, jurisdictional motion overruled in (1993), 66 Ohio St.3d 1410, 607 N.E.2d 9.

14. *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 508, 433 N.E.2d 572, 576–577. See, also, *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172–173, 539 N.E.2d 1114, 1116–1117.