**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0571n.06
Filed: August 9, 2006

No. 05-3950

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JAY A. EILERMAN and JENNIFER M. EILERMAN, | ) ) ) | |
| **Plaintiffs-Appellants,** | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| CARGILL INC., d/b/a Cargill Oilseed Processing, | ) ) ) | **O P I N I O N** |
| **Defendant-Appellee.** | ) ) | |
| _____ | ) | |

**Before: MOORE, CLAY, and GRIFFIN, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiffs-Appellants Jay A. Eilerman

("Eilerman") and Jennifer M. Eilerman ("Mrs. Eilerman") (collectively "the plaintiffs") sued

Defendant-Appellant Cargill Inc., d/b/a Cargill Oilseed Processing ("Cargill"), for injuries Eilerman

sustained while in Cargill's employ. Eilerman alleged an intentional tort, and Mrs. Eilerman alleged

a loss of consortium, with both actions based on Ohio common law. The district court granted

summary judgment to Cargill on the intentional-tort claim because the plaintiffs produced

insufficient evidence of Cargill's intent to harm Eilerman. The district court also granted summary

judgment to Cargill on the loss-of-consortium claim because the action was derivative of the

intentional-tort claim. Because both conclusions were correct, we **AFFIRM** the order granting

summary judgment to Cargill.

# I. BACKGROUND

The pertinent facts of this case are simple and undisputed. Cargill, which operates an oilseed processing plant in Sidney, Ohio, has a policy requiring employees to follow the company's "lockout/tagout" procedure. Lockout/tagout refers to a safety procedure whereby an employee may perform maintenance on a piece of equipment only after completing several other steps: notify other affected employees that the equipment will be shut down, turn off the equipment, deactivate the devices (e.g., circuit breakers) that provide energy to the equipment, place a lock and a tag on switches that could reactivate the equipment, release any energy that might be stored in the equipment, and test the controls to ensure that no energy is flowing to the equipment. Joint Appendix ("J.A.") at 343-45 (Lockout/Tagout Pamphlet at 13-16); J.A. at 370-72 (Lockout Policy). *See generally* 29 C.F.R. § 1910.147 ("The control of hazardous energy (lockout/tagout)"). Cargill trains its employees on the lockout/tagout procedure (and other safety procedures) thirty, sixty, and ninety days after hiring them, and it enforces the lockout/tagout policy by disciplining employees who violate it.

Beginning in June 2001, Eilerman began working as an elevator operator and meal load operator at Cargill's Sidney plant. Eilerman testified that he received training about the lockout/tagout procedure on at least four occasions before the accident: at an initial orientation on or about June 20, 2001, at two subsequent orientations on or about August 10, 2001 and December 28, 2001, and at a plant-wide safety meeting at the end of January 2002. At the last meeting, Eilerman received booklets detailing the lockout/tagout procedure, viewed a video about the procedure, and saw a demonstration of the procedure. Eilerman was aware that the lockout/tagout procedure was part of the plant's safety rules and expected to be disciplined if he did not follow it.

Eilerman had personally performed the lockout/tagout procedure every time he performed maintenance on a piece of equipment, and he never had any difficulty with it. Nobody had ever discouraged Eilerman from following the lockout/tagout procedure.

On February 10-11, 2002, Eilerman worked an overnight shift with Richard Danzig. Eilerman and Danzig were responsible for loading rail cars with meal, which they accomplished by inputting commands into a computer located in a separate control room. Eilerman himself has no recollection of the events of that night, so the only evidence in the record of the relevant events is Danzig's deposition testimony. At about 4:15 AM, Eilerman attempted to load a car with meal from a particular tank, but the computer indicated that the tank's gate did not open. "[Eilerman] said that he knew how to open it manually. . . . So he went over to the cabinet there and got a pipe wrench out and went down to the tank." J.A. at 231 (Danzig Dep. at 9). Before leaving the control room to go to the tank, neither Eilerman nor Danzig performed the lockout/tagout procedure. According to Danzig, "I guess we just didn't think to do it." J.A. at 238 (Danzig Dep. at 16).

Eilerman then "climbed up on top of the drag, which is what the meal falls into and takes it to load it, and he put [the wrench] on the end of the motor and started turning it." J.A. at 231 (Danzig Dep. at 9). In other words, when the tank's gate appeared to be stuck shut, Eilerman attempted to open the gate manually by using the wrench to rotate the shaft of the motor that controlled the gate. The motor normally would have been made inaccessible by a barrier guard covering it, but it had been removed some time in the past. Danzig testified as to what happened next: "I told [Eilerman] it's coming open, and the next thing I know, I just heard a big loud noise, bang, you know. . . . Then the next thing I know, he is down on the floor." J.A. at 232 (Danzig Dep. at 10). Apparently, the motor that Eilerman was manipulating with the wrench unexpectedly started

3

operating, causing the wrench to spin around and strike Eilerman in the head. According to the plaintiffs' own expert, if the lockout/tagout procedure had been followed, the accident would not have happened, as there would have been no power flowing to the motor. J.A. at 414, 415 (Maul Dep. at 89-90, 94-95).

Invoking jurisdiction based on diversity of citizenship,[1] the plaintiffs brought two claims against Cargill under Ohio common law: Eilerman alleged an intentional tort, while Mrs. Eilerman alleged a loss of consortium. Cargill moved for summary judgment, arguing that the plaintiffs offered insufficient evidence of Cargill's intent to harm Eilerman. The district court referred the motion to a magistrate judge, who agreed that the plaintiffs could not prove intent, principally because of Eilerman's failure to follow the lockout/tagout procedure. The magistrate judge thus recommended granting summary judgment on the intentional-tort claim; he also recommended granting summary judgment on the loss-of-consortium claim because it was dependent on the intentional-tort claim. Overruling the plaintiffs' subsequent objections, the district court adopted the magistrate judge's recommendations and granted summary judgment to Cargill on both claims. The plaintiffs now appeal.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006). Summary judgment is "rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1]It is undisputed that (1) the plaintiffs are citizens of Ohio, (2) Cargill is a citizen of both Delaware and Minnesota, and (3) the amount-in-controversy requirement has been satisfied. *See* 28 U.S.C. § 1332.

4

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).[2]  A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmovant. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In making this determination, we must view the facts and the inferences drawn therefrom in the light most favorable to the nonmovant. *Bell v. United States*, 355 F.3d 387, 392 (6th Cir. 2004).

## B.  Intentional Tort

A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), *cert. denied*, 541 U.S. 1027 (2004).  Ohio law generally makes available to employees injured in the course of employment only those remedies provided by the state's Workers' Compensation Act. OHIO CONST. art. II, § 35; OHIO REV. CODE ANN. §§ 4123.74, 4123.741.  These exclusivity provisions do not, however, bar an employee from pursuing a common-law intentional-tort action against his employer. *Blankenship v. Cincinnati Milacron Chems., Inc.*, 433 N.E.2d 572, 576 (Ohio), *cert. denied*, 459 U.S. 857 (1982).

The Ohio Supreme Court's decision in *Fyffe v. Jeno's, Inc.*, 570 N.E.2d 1108 (Ohio 1991), is "[t]he definitive Ohio case on the requirements for establishing an intentional tort claim against an employer." *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999).[3]  *Fyffe* sets out the

---

[2]The summary-judgment standard is a procedural rule rather than an issue of substantive law, so the federal standard of Rule 56 governs diversity cases. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165-66 (6th Cir. 1993).

[3]We recently explained the continued vitality of *Fyffe*:
After the Ohio Supreme Court decided *Fyffe*, the Ohio General Assembly enacted Ohio Rev. Code § 2745.01 (effective November 1, 1995), in an attempt to overrule

following requirements "to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee":

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
> (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
> (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

570 N.E.2d at 1109 syllabus para. 1, 1112 (paragraph breaks added).[4]

The plaintiffs believe that this case is about a single fact: Cargill's undisputed removal of the safety guard covering the motor that Eilerman was attempting to repair when he was injured. They cite a number of decisions resolved in favor of the employee on the basis of the employer's removal of or failure to install a safety guard. *E.g.*, *Fyffe*, 570 N.E.2d at 1112-13; *Russell v. Interim*

---

> it and other intentional-tort cases and replace the standards articulated therein with a more heightened plaintiff burden. However, in *Johnson v. BP Chemicals, Inc.*, 707 N.E.2d 1107, 1114 (1999), the Ohio Supreme Court struck down section 2745.01 as "unconstitutional in its entirety." This decision thus reinstated the applicability of the standard articulated in *Fyffe*. While it appears that the Ohio General Assembly has again enacted another version of section 2745.01 (effective April 7, 2005), that statute was not effective at the time the injury occurred in this case. Thus, we conclude that the *Fyffe* standard applies.

*Harris v. Sunoco, Inc.*, 137 F. App'x 785, 786 n.1 (6th Cir. 2005) (unpublished opinion) (parallel citation omitted); *accord Smith v. Gen. Motors Corp.*, 172 F. App'x 661, 665 n.2 (6th Cir. 2006), *petition for cert. filed*, 74 U.S.L.W. 3704 (U.S. June 6, 2006) (No. 05-1566).

[4]As *Fyffe* itself acknowledges, these three prongs only establish the intent element of the intentional tort. As is true for all intentional torts, an employee must also prove causation. *Raines v. Rubbermaid, Inc.*, 678 N.E.2d 988, 991 (Ohio Ct. App. 1996) (citing *Avon Lake City Sch. Dist. v. Ohio Dep't of Taxation*, 563 N.E.2d 754, 756 (Ohio 1989)); *Posen v. Sitecon*, L.L.C., No. 86239, 2006 WL 1774131, at *4 (Ohio Ct. App. June 22, 2006) (unpublished opinion) (collecting cases). In other words, "the plaintiff must prove a nexus between the act or omission of the employer and her injury." *Crum v. Lenkei Bros. Cabinet Co.*, No. 94-CA-6, 1994 WL 528035, at *1 (Ohio Ct. App. Sept. 19, 1994) (unpublished opinion). Because we conclude that Eilerman has failed to establish Cargill's intent, we need not address the issue of causation.

*Pers., Inc.*, 733 N.E.2d 1186, 1190-91 (Ohio Ct. App. 1999); *Walton v. Springwood Prods., Inc.*, 663 N.E.2d 1365, 1368-69 (Ohio Ct. App. 1995); *Watson v. Aluminum Extruded Shapes*, 575 N.E.2d 235, 237-38 (Ohio Ct. App. 1990). According to the plaintiffs, summary judgment for Cargill was improper under this line of authority, because if the safety guard had been in place, the motor would have been inaccessible and Eilerman would not have been injured.

By characterizing this case as solely about Cargill's removal of the safety guard, the plaintiffs tell only half the story. They downplay another crucial fact: Eilerman knew of, but failed to follow, Cargill's well-established lockout/tagout procedure — a procedure that, if followed, would have prevented Eilerman's injury. The significance of an employee's knowing failure to follow his employer's safety procedures was suggested by the Ohio Supreme Court in *Sanek v. Duracote Corp.*, 539 N.E.2d 1114 (Ohio 1989). There, the employee's arm was caught in a machine when he attempted to repair the machine by hitting it with his gloved hand. *Id.* at 1115. Apparently on the basis of the fact that "[u]sually, someone else corrected the problem by turning off the [machine's] power source," *id.*, the court concluded that the employer "could hardly be expected to have anticipated the actions of appellee which led to his injury," *id.* at 1117. Following *Sanek*'s lead, numerous Ohio lower-court decisions have held that if an employee is injured as a result of his knowing failure to follow a safety procedure that would have averted the injury, the employer cannot be said to have the requisite intent under *Fyffe*. *E.g.*, *Goodin v. Columbia Gas of Ohio, Inc.*, 750 N.E.2d 1122, 1135-36, 1139-40 (Ohio Ct. App. 2000); *Youngbird v. Whirlpool Corp.*, 651 N.E.2d 1314, 1318-19 (Ohio Ct. App. 1994); *Wetmore v. Am. Guard Co.*, No. 2002-L-058, 2003 WL 1632970, at *3 (Ohio Ct. App. Mar. 28, 2003) (unpublished opinion); *Tipton v. Bernie's Elec. Sales & Servs.*, No. WM-02-009, 2003 WL 1700825, at *6 (Ohio Ct. App. Mar. 31, 2003) (unpublished

7

opinion); *Parker v. JJJS, Inc.*, No. 98-CA-63, 1999 WL 4073, at *2 (Ohio Ct. App. Dec. 29, 1998)

(unpublished opinion); *Neal v. McGill Septic Tank Co.*, No. 98-T-0022, 1998 WL 964505, at *2-*4

(Ohio Ct. App. Dec. 4, 1998) (unpublished opinion); *Breininger v. Harborside of Ohio Ltd. P'ship*,

No. WM-97-011, 1998 WL 80457, at *3 (Ohio Ct. App. Feb. 20, 1998) (unpublished opinion);

*Anderson v. Adams Shell*, No. 65619, 1994 WL 264310, at *4 (Ohio Ct. App. June 16, 1994)

(unpublished opinion); *Hutton v. Corcon Indus. Painting, Inc.*, No. 92 C.A. 41, 1993 WL 102909,

at *3-*4 (Ohio Ct. App. Mar. 29, 1993) (unpublished opinion).

Of particular relevance to the instant case, the *Sanek* principle has been applied to excuse the

liability of employers even when they remove safety guards:

> [D]irect evidence of the employer's removal of the safety guard on equipment that
> the employee was assigned to operate automatically triggers inferences which will
> satisfy [the three-prong intent] test for purposes of [summary judgment]. The
> exception is when the employee, despite the missing safety guard, knowingly acts
> in contradiction of the employer's safety protocol. In that instance, the Supreme
> Court has concluded that the employer cannot be expected to anticipate the
> employee's misconduct under the second [prong of the intent] test. See [*Sanek*].

*Watson*, 575 N.E.2d at 237 (footnote omitted). Accordingly, there are a number of cases in which

the Ohio courts have rejected intentional-tort claims premised on missing safety guards because the

employers implemented (and the employees knowingly failed to follow) safety procedures that

would have prevented the injuries. *Robinson v. Icarus Indus. Constr. & Painting Co.*, 762 N.E.2d

463, 466-67 (Ohio Ct. App. 2001); *Davis v. AK Steel*, No. CA2005-07-183, 2006 WL 318661, at *2

(Ohio Ct. App. Feb. 13, 2006) (unpublished opinion); *Ortiz v. Elyria Foundry Co.*, No.

92CA005302, 1992 WL 308556, at *3 (Ohio Ct. App. Oct. 21, 1992) (unpublished opinion); *Bader

v. Therm-O-Disc, Inc.*, No. CA-2732, 1990 WL 139828, at *5-*6 (Ohio Ct. App. Sept. 5, 1990)

(unpublished opinion). Here, it is undisputed that Eilerman had been trained in Cargill's

8

lockout/tagout safety procedure, that Eilerman failed to follow the procedure before attempting the repair that led to his injury, and that adherence to the procedure would have averted the injury. Under Ohio law, Eilerman cannot establish Cargill's intent in these circumstances.

There is the matter of specifying which intent prong Eilerman cannot establish. Although some of the cases cited above rely on the employee's knowing failure to follow safety procedures to conclude that the employee failed to establish the first or third *Fyffe* prongs, *e.g.*, *Goodin*, 750 N.E.2d at 1139-40; *Robinson*, 762 N.E.2d at 466-67, most decisions apply the *Sanek* principle to the second prong. We follow these decisions in concluding that Eilerman has failed to establish "knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty." *Fyffe*, 570 N.E.2d at 1109 syllabus para. 1, 1112. Because the three *Fyffe* prongs are conjunctive, this conclusion makes it unnecessary for us to reach the first and third prongs, and we express no opinion about them.

## C. Loss of Consortium

The plaintiffs do not explicitly appeal the grant of summary judgment on Mrs. Eilerman's loss-of-consortium claim. However, given that judgment was granted on the loss-of-consortium claim solely because judgment was granted on the intentional-tort claim, the plaintiffs can be understood to be appealing the former by appealing the latter. In any event, the district court's determination was correct. Ohio law "recognize[s] that a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 392 (Ohio 1992). Because Eilerman's intentional-tort claim fails for the reasons discussed above, Mrs. Eilerman's

9

loss-of-consortium claim must also fail. *See Johnson v. Ohio Dep't of Rehab. & Corr.*, No. 02AP-1428, 2003 WL 22006860, at *4 (Ohio Ct. App. Aug. 26, 2003) (unpublished opinion); *Jackson v. Reynolds & Reynolds Co.*, No. 14635, 1995 WL 245170, at *1 (Ohio Ct. App. Apr. 28, 1995) (unpublished opinion).

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order granting summary judgment to Cargill.