YOUNG, Appellant,

v.

INDUSTRIAL MOLDED PLASTICS, INC., Appellee.

[Cite as *Young v. Indus. Molded Plastics,* 160 Ohio App.3d 495, 2005-Ohio-1795.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2004–P–0005.

Decided April 15, 2005.

496

Stephen S. Vanek, Joseph C. Domiano, and Michael L. Eisner, for appellant.
Douglas S. Musick and Cathryn Ensign, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} This is an appeal by appellant, Leonard Young, from the judgment of the Portage County Court of Common Pleas granting a motion for summary judgment in favor of appellee, Industrial Molded Plastics.

{¶ 2} Appellant was employed by appellee as a machine operator. On February 22, 2000, James Doolittle, appellee's foreman, assigned appellant to a mold press ("Press 11") with which he was unfamiliar. Doolittle trained appellant for approximately 20 minutes and monitored him on the press for approximately 90 minutes.

{¶ 3} To operate the press, the operator had to open a yellow safety door, place the proper amount of raw fiberglass into the machine, close the safety door, and depress and hold two palm buttons simultaneously; if the buttons were not depressed simultaneously or if they were not depressed for the requisite time, the press would not cycle. Once actuated, a ram[1] would descend into a hole in the

---

1. The ram was a hydraulic steel device that was set some six inches above the raw fiberglass; once the buttons were depressed, the ram would drop six inches into a hole in the mold.

mold and the press would mold the fiberglass at a temperature of 300 to 320 degrees.

{¶ 4} According to Doolittle, the primary purpose of the safety door was to "keep people's hands out" of the press. However, the door was not electrically or mechanically interlocked with the machine: The door had to be manually closed by the operator, and the press could cycle even if the safety door was open. While other presses in the plant were equipped with electrical interlocking safety devices, no such device was ever installed on Press 11.

{¶ 5} After monitoring appellant on the machine, Doolittle began work on a press across from Press 11. Doolittle noticed that appellant was talking to a woman employee stationed next to him;[2] Doolittle testified that although employees are permitted to converse with one another, appellant was not paying full attention to his press. Several minutes had passed when Doolittle heard appellant scream. Doolittle hastened to appellant's press and observed appellant's right hand pinned under the ram. Appellant was quickly extricated and removed to the plant office. After medical treatment, appellant lost one of his fingers. Subsequent corrective surgery resulted in the removal of a second finger.

{¶ 6} In his deposition, appellant alleged that the ram suddenly and unexpectedly came down on his hand as he was loading material into the press. He claimed that the machine spontaneously dropped the ram without manual pressure on the buttons. After the incident, however, Doolittle and others attempted to re-create the accident in an effort to understand and prevent future injuries. However, they were unable to produce any misfires or disengagements of the sort alleged by appellant.

{¶ 7} From these observations and those he made immediately before the accident, Doolittle hypothesized that appellant began a cycle without having removed a finished part. After realizing this, he stuck his arm in the press to retrieve the part before the ram dropped. Doolittle noted that the timing mechanism in the press allowed a two- to three-second interval (after the palm buttons were depressed) before the ram dropped. In Doolittle's view, appellant failed to move fast enough, and the ram dropped as his hand was removing the finished part.

{¶ 8} Appellant's expert, Richard Harkness, Ph.D., a registered professional engineer, similarly testified:

---

According to Doolittle, after the buttons were depressed, the ram's six-inch descent would take approximately two to three seconds.

2. Doolittle stated that appellant was prone, "off and on," to talking while operating his press and not giving the work his full attention. However, he characterized this as a minor problem.

{¶ 9} "Mr. Young got 'out of synch' with the press cycle. After the cycle was complete, the mold was opened and Mr. Young opened the gate. He should then have removed the parts from the mold. However, he made a foreseeable mistake and depressed the dual palm buttons first before reaching into the point of operation to remove the parts. The ram descended, entrapping his right hand and causing his injuries."

{¶ 10} On October 20, 2003, appellee moved for summary judgment, which appellant timely opposed. On January 5, 2004, the trial court awarded summary judgment in appellee's favor. In doing so, the court assumed the facts alleged by appellant in his deposition despite the factual (evidentiary) dispute between appellant's reconstruction of events and Doolittle's hypothesis (a theory supported by appellant's expert witness and used in his motion opposing summary judgment). In its judgment entry, the trial court stated:

{¶ 11} "Upon review of the evidence presented in this case, Plaintiff has failed to establish, as a matter of law, the elements necessary to prove a workplace intentional tort. '[M]ere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.' Moreover, even if this Court accepted the 'new'[3] theory of how Plaintiff was injured as a possible chain of events, Plaintiff has failed to offer any evidence that this scenario actually happened, given Plaintiff's own testimony."

{¶ 12} Appellant now appeals from this judgment and assigns the following error for our review:

{¶ 13} "The trial court erred, to the prejudice of Appellant Leonard Young by granting Industrial Molded Plastics' motion for summary judgment on appellants' intentional tort claim, by finding that he had failed to show that the accident was substantially certain to occur and that appellant submitted no evidence of how the accident occurred."

{¶ 14} Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to a construction of the evidence most strongly in his favor. Civ.R. 56(C).

---

3. In its decision, the trial court accepted appellant's own theory of how his accident occurred, i.e., that the ram spontaneously and suddenly fell on his hand. However, the court also referred to appellant's so-called new theory of recovery, i.e., that appellant, after depressing the palm buttons, placed his hand into the machine and the ram struck his hand before it could be removed. The court concluded that neither theory could prevent summary judgment for appellee, as appellant failed to present evidence sufficient to support either theory.

{¶ 15} The moving party must assert evidence informing the lower court of the basis for the motion by identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Hunter v. Interpak, Inc.*, 11th Dist. No. 2001–L–198, 2002-Ohio-7149, 2002 WL 31862677, at ¶ 9. The moving party must specifically point to some evidence of the sort listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. Id.

{¶ 16} If the moving party fails to satisfy her burden, summary judgment should be denied. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. However, where the moving party meets her initial burden, the burden shifts to the nonmoving party to respond with evidence permitted by Civ.R. 56 demonstrating a genuine issue of material fact. Id. In effect, if reasonable minds could find for the nonmoving party, a motion for summary judgment must be overruled. *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.

{¶ 17} To establish an employer-intentional-tort claim, a party must demonstrate each of the following:

{¶ 18} " '(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within the business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.' " *Renner v. East Mfg. Corp.*, 11th Dist. No. 2001–P–0135, 2002-Ohio-6691, 2002 WL 31744760, at ¶ 20, citing *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 484, 696 N.E.2d 1044. See, also, *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 19} In order to reverse the grant of summary judgment, appellant must demonstrate a material issue of fact relating to each prong of the foregoing test. See, e.g., *Renner*, 2002-Ohio-6691, at ¶ 20.

{¶ 20} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the

result." *Fyffe, supra,* 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph two of the syllabus.

{¶ 21} The above factors operate to impose a foreseeability test. *Browne v. Walgreens,* 11th Dist. No. 2002–L–062, 2003-Ohio-6691, 2003 WL 22931357, at ¶ 15. Where harm is foreseeable, the harm is substantially certain to occur. *Fleck v. Snyder Brick & Block* (Mar. 16, 2001), 2d Dist. No. 18368, 2001 WL 256279, * 2. However, mere awareness or appreciation of a risk is something short of substantial certainty and does not rise to the level of intent. *Browne, supra,* 2003-Ohio-6691, at ¶ 14.

{¶ 22} The first prong of the foregoing test requires us to determine whether appellant presented facts demonstrating that appellee had knowledge of the existence of a dangerous condition.

{¶ 23} During his deposition, Doolittle testified that the press was entirely manual and if the palm buttons were depressed properly, it would cycle whether the safety door was open or closed. Moreover, Doolittle indicated that an operator had two or three seconds once the buttons were depressed before the ram fully engaged the fiberglass. According to Doolittle, an operator has "plenty of time to reach in there and get his hand under [the ram]." In Doolittle's view, were an operator's hand hit by the ram, an injury would be "substantially certain." To the extent that an instrumentality is substantially certain to cause injury, reasonable minds could conclude that the instrumentality is dangerous.

{¶ 24} With respect to first prong of the *Fyffe* test, summary judgment was inappropriate.

{¶ 25} We next address *Fyffe's* third prong, which requires appellant to show evidence that appellee, with knowledge, did act to require appellant to work on Press 11. An employer does not have to expressly order the employee to engage in the dangerous task leading to his injury. *Gibson v. Drainage Prods., Inc.,* 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, at ¶ 23. Rather, an employee may satisfy the third prong of the *Fyffe* inquiry by " 'presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task.' " *Browne, supra,* 2003-Ohio-6691, ¶ 18, citing *Hannah v. Dayton Power & Light Co.,* 82 Ohio St.3d at 485, 696 N.E.2d 1044.

{¶ 26} In his deposition, Doolittle testified that his duties as the plant foreman included assigning employees to machines in the plant. On February 22, 2001, appellant was assigned to Press 11 and was expected to remain there for the workday. As indicated above, Doolittle had contemplated the possibility of an employee being injured on Press 11 because an operator could open and reach

into the press while it was cycling. Because appellant was specifically assigned to Press 11 on the day in question and Doolittle was aware of the dangerousness of the press, there is a genuine issue of material fact as to the third prong of the *Fyffe* test.

{¶ 27} Next, the second prong of the *Fyffe* analysis requires appellant to set forth facts demonstrating knowledge by appellee that if he was subjected to the dangerous process, procedure, instrumentality, or condition, then harm would be a substantial certainty. *Fyffe,* supra, 59 Ohio St.3d at 118, 570 N.E.2d 1108.

{¶ 28} An accident of the sort suffered by appellant had never occurred in appellee's plant. The lack of a previous accident is evidence tending to show that appellee did not have knowledge that an injury was substantially certain to occur. *Browne,* supra, 2003-Ohio-6691, at ¶ 17. However, that persons have not been maimed or killed by a device or procedure in the past is not dispositive of whether that device or procedure is dangerous or unsafe. Accepting such a proposition would permit each employer one free injury for " 'every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of *Fyffe.*' " *Taulbee v. Adience, Inc.* (1997), 120 Ohio App.3d 11, 20, 696 N.E.2d 625, quoting *Cook v. Cleveland Elec. Illum. Co.* (1995), 102 Ohio App.3d 417, 429–430, 657 N.E.2d 356.

{¶ 29} "A foreseeable risk is a risk that is substantially certain to occur." *Browne,* supra, 2003-Ohio-6691, at ¶ 15, citing *Fleck,* supra, 2001 WL 256279, at * 2. However, a risk that is merely possible is not a foreseeable risk for purposes of our analysis. As we indicated above, to impose liability for an employer's intentional tort, a plaintiff must establish proof *beyond* that required for negligence and recklessness. *Renner,* supra, 2002-Ohio-6691, at ¶ 20. While the caselaw does not indicate that this standard is tantamount to the reasonable-doubt standard of criminal law, a plaintiff nevertheless shoulders a heavy burden. *Zink v. Owens–Corning Fiberglas Corp.* (1989), 65 Ohio App.3d 637, 644, 584 N.E.2d 1303. We believe, therefore, as it relates to the current matter, that a foreseeable risk is not merely a probable risk, but a highly probable risk.

{¶ 30} Prior to appellant's injury, Doolittle admitted that he had contemplated the possibility of an operator depressing the palm buttons with the safety door agape and placing his or her hand in the path of the ram. Doolittle also acknowledged that such a scenario would cause injury. We must reiterate, however, that no such injury had occurred in appellee's plant prior to the injury under consideration. On the day of the injury, Doolittle demonstrated the proper way to operate Press 11; Doolittle indicated that he monitored appellant's operations for some 90 minutes and testified that if operated properly, the press

posed no danger to its operator and certainly did not involve a dangerous process substantially certain to cause injury. Doolittle's own operation of Press 11 underscores his belief. Moreover, Thomas Veon, an employee and press operator for appellee, testified that he had never witnessed anyone operating the press with the safety gate open.

{¶ 31} In our view, nothing in the record suggests that appellee had knowledge that if appellant was subjected by his employment to Press 11, then harm to appellant would be a substantial certainty. Therefore, the risk of the harm that occurred to appellant was not foreseeable to appellee pursuant to *Fyffe*.

{¶ 32} In sum, appellant failed to raise a genuine issue of material fact as to the second prong of the *Fyffe* test. As a result, appellant's sole assignment of error is overruled, and the judgment of the Portage County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.