OPINION
{¶ 1} This case involves summary judgment in a suit alleging an employer intentional tort. Randall Moore (hereinafter "Moore") filed a claim against The Ohio Valley Coal Company (hereinafter "Ohio Valley Coal" or "Appellee"), due to injuries sustained when Moore passed out in an underground coal mine due to lack of oxygen. Moore's wife joined in the complaint alleging loss of consortium, and they will be collectively referred to as "Appellants." Ohio Valley Coal filed a motion for summary judgment alleging that Appellants could not establish the elements of an employer intentional tort as set forth in Fyffe v. Jeno's Inc. (1991),59 Ohio St.3d 115, 570 N.E.2d 1108. The trial court orally indicated at the summary judgment hearing that it was overruling the motion for summary judgment, but the court filed a judgment entry nine months later sustaining the motion.
 {¶ 2} Appellants contend that the trial court improperly reversed its judgment without proper notice, did not recognize certain disputes over material facts, misapplied the holding in Fyffe, and improperly used principles of assumption of the risk and comparative negligence. Appellants' arguments are not persuasive. The record shows that the trial court did not make a final ruling at the summary judgment hearing, which allowed Appellants an additional nine months to supplement their response before issuing a final order. The record *Page 3 
shows that Moore failed to use his safety equipment in the mine, that he violated safety regulations when he entered the area where the accident occurred, that he was not required to perform any tasks that he considered to be dangerous, and that there were no prior accidents or safety issues reported regarding the mine rehabilitation work that Moore was involved with. Appellants did not rebut this evidence. The burden of proof was on Appellants to set forth some material evidence on each of the elements of the employer intentional tort claim, and they have failed to meet that burden. For these and other reasons more fully explained below, the judgment of the trial court is affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 3} Most of the following facts come from a report completed by the Mine Safety Health Administration ("MSHA") soon after Appellant's accident. In 1998, Appellee was cited by the MSHA with respect to a previously mined section of The Powhatan No. 6 Mine, an underground coal mine in Belmont County. Appellee eventually decided to rehabilitate the area. On February 15, 2000, Moore and three other crew members began the rehabilitation of a section of the mine near a sealed off area, labeled as Seal No. 12 in the Main West Right Side Seals-Rehabilitation Area. Moore was the foreman of the crew. The other crew members were William Holland (mining machine operator), and Jim Shapley and Kevin Roe (roof bolting machine operators). Their work consisted of cutting down deteriorated mine roofs and installing support bolts and wire-mesh ceiling screens. The work continued without incident until the day of the accident. These same four crew members were the *Page 4 
only persons who worked in this area of the mine, and they worked only one shift per day.
 {¶ 4} During this work, Appellant was issued a CMX-270 methane, oxygen and carbon monoxide detector which gave an alarm when the oxygen level dropped to less than 19.5 percent. Holland also had a methane/oxygen detector. These detectors appear to have been in working condition at the time of the accident, although there may be some dispute about this. There was also a 20-foot extendable probe that could be connected to the oxygen detection machines.
 {¶ 5} The record indicates that the work area contained a phone, first-aid supplies, and four self-contained self-rescuers ("SCSRs"), which are portable emergency oxygen devices.
 {¶ 6} The accident occurred on May 8, 2000. Moore and Holland were discussing how to cut down the mine roof in a section near Seal No. 12. Holland got down on his knees to observe the roof in front of them. He stood up, and when he turned back around, he saw Appellant lying on his stomach on the mine floor, approximately 25 feet away, near the entrance to Seal No. 12. Holland signaled to Shapley and Roe for help, who were about 60 feet away. Holland heard Appellant's oxygen detector sounding an alarm, indicating a condition of low oxygen. Holland attempted to help Appellant, but was also overcome by a lack of oxygen. Shapley and Roe quickly arrived. Shapley moved Holland to an area with higher oxygen levels, and he regained consciousness. Roe retrieved the four SCSRs, and then he and Shapley went *Page 5 
to assist Moore. Additional personnel soon arrived, including an EMT. Moore was quickly transported to the surface, and was life-flighted to Pittsburgh. He was treated and released from the hospital on May 11, 2000. Holland, Roe and Shapley were also taken to the hospital and released on the evening of May 8, 2000.
 {¶ 7} On May 7, 2002, Appellants filed a complaint in the Belmont County Court of Common Pleas against Ohio Valley Coal alleging an employer intentional tort. On December 1, 2003, Appellee filed a motion for summary judgment. Appellee supported its motion with affidavits from Jerry M. Taylor (Corporate Safety Manager for Appellee); Joseph Smolina (mine foreman); and Roy Heidelbach (mine superintendent). Appellee also submitted a sworn statement by crew member Roe, and an official report prepared by the MSHA. Finally, Appellee submitted Moore's deposition taken on August 27, 2003.
 {¶ 8} Appellants filed a reply on January 30, 2004. An oral hearing on the motion was held on April 12, 2004. On December 16, 2004, the trial court granted Appellee's motion for summary judgment, and this decision was incorporated into a judgment entry on January 11, 2005. This timely appeal followed. Appellants present four assignments of error.
 ASSIGNMENT OF ERROR NO. 1 {¶ 9} "THE TRIAL COURT ERRED IN ITS RULING OF DECEMBER 16, 2004, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, THUS REVERSING ITS PRIOR RULING OF APRIL 12, 2004, DENYING SAID *Page 6 
MOTION, WITHOUT NOTICE AND OPPORTUNITY FOR FURTHER HEARING TO APPELLANTS.
 {¶ 10} The premise of this assignment of error is that the trial court reversed its judgment of April 12, 2004, without notice to the parties, but the record does not reflect that this occurred. There is no journal entry from April 12, 2004, and therefore, the trial court did not reverse its judgment when it granted summary judgment to Appellee on December 16, 2004. The trial court did indicate from the bench on April 12, 2004, that Appellee's motion for summary judgment was being overruled, but the court never journalized its decision. It is axiomatic that a court speaks through its journal, and if the court's decision is not journalized, it is not a decision of record. Joyce v. General MotorsCorp. (1990), 49 Ohio St.3d 93, 95, 551 N.E.2d 172.
 {¶ 11} Furthermore, the denial of a motion for summary judgment is an inherently interlocutory decision, and not a final order or final judgment. Vaccariello v. Smith Nephew Richards, Inc. (2002),94 Ohio St.3d 380, 386, 763 N.E.2d 160. Any order, including the denial of a motion for summary judgment, that fails to adjudicate all claims against all parties is interlocutory and subject to revision by the trial court, unless the trial court certifies that there, "is no just reason for delay" pursuant to Civ.R. 54(B). Haynes v. Franklin (1999),135 Ohio App.3d 82, 87, 732 N.E.2d 1060. In this case, the trial court neither journalized its interlocutory decision, nor certified it under Civ.R. 54(B). In effect, the court apparently allowed the parties an additional nine months to supplement the record before making a final ruling. Appellants did not add any *Page 7 
further evidence or make any additional arguments during that time. The trial court was free to revise its oral decision at any time. There certainly is no prejudicial error in giving Appellants nine additional months to provide more evidence before entering a final ruling.
 ASSIGNMENTS OF ERROR NOS. 2 AND 3 {¶ 12} "THE TRIAL COURT ERRED BY FAILING TO ACCORD APPELLANTS ALL FAVORABLE INFERENCES FROM THE FACTS WHICH CREATE A DISPUTE OF MATERIAL FACT TO BE DETERMINED BY THE JURY."
 {¶ 13} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW BASED ON THE STANDARDS STATED INFYFFE VS. JENO'S, INC. (1991), 59 OHIO ST.3D 115."
 {¶ 14} These two assignments of error are related and will be treated together.
 {¶ 15} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the *Page 8 
party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the non-moving party. Id.
 {¶ 16} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. Brewer v. Cleveland Bd. ofEdn. (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.
 {¶ 17} This case involves an employer intentional tort. In Ohio, an employee generally must rely on the worker's compensation system to be compensated for job-related injuries, and does not need to sue the employer in tort in order to be compensated. Page v. Taylor Lumber,Inc., 161 Ohio App.3d 644, 2005-Ohio-3104, 831 N.E.2d 1017, ¶ 10. However, an employee may also enforce his common-law rights against his employer if the injury stems from an intentional tort. Blankenship v.Cincinnati Milacron Chem., Inc. (1982), 69 Ohio St.2d 608,23 O.O.3d 504, 433 N.E.2d 572. An intentional tort in this context *Page 9 
means that the employer committed some act by which the employer intentionally and deliberately injures the employee. Vermett v. FredChristen Sons Co. (2000), 138 Ohio App.3d 586, 599, 741 N.E.2d 954.
 {¶ 18} The Ohio Supreme Court created the employment intentional tort as a very narrow exception to the worker's compensation system. In effect, the employee must establish facts to show that the employer's actions were so egregious that they must be treated as being outside of the employment context altogether, and thus, not completely compensable under the worker's compensation system. Brady v. Safety-Kleen Corp.
(1991), 61 Ohio St.3d 624, 576 N.E.2d 722; see also Burns v. LawsonCo. (1997), 122 Ohio App.3d 105, 110, 701 N.E.2d 386.
 {¶ 19} In an employer intentional tort claim, the plaintiff must ultimately be able to establish that the employer required the employee to continue working in an unusually dangerous situation and that the employer possessed actual or constructive knowledge of the situation: "The fact that the employer might or should have known that if it required the employee to work under dangerous conditions the employee would certainly be injured is not enough to establish a case for intentional tort. Rather, the determination turns on whether the plaintiff alleges facts showing the employer possessed actual or constructive knowledge of the dangerous situation." Caldwell v.Petersburg Stone Co., 7th Dist. No. 02CA8, 2003-Ohio-3275, ¶ 41.
 {¶ 20} "[T]o impose liability for an employer intentional tort, a plaintiff must establish proof beyond that required for negligence and recklessness. *Page 10 
While the caselaw does not indicate that this standard is tantamount to the reasonable-doubt standard of criminal law, a plaintiff nevertheless shoulders a heavy burden." (Citations omitted.) Young v. Indus. MoldedPlastics, 160 Ohio App.3d 495, 2005-Ohio-1795, 827 N.E.2d 852, ¶ 29.
 {¶ 21} Although there is a statute governing employer intentional torts, R.C. § 2745.01, prior versions of the statute were considered to be unconstitutional and were later repealed, and the current version of the statute is only effective after April 4, 2005. Claims accruing prior to that date are governed by the standards of common law. Therefore, the parties are correct that this case is governed by the common law standard in Fyffe, which states:
 {¶ 22} "in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 23} A plaintiff must satisfy all three prongs of the Fyffe test, and a failure of proof with respect to any one prong will defeat the intentional tort *Page 11 
claim. Timmons v. Marketing Services by Vectra, Inc. (Nov. 18, 1999), 10th Dist. No. 99AP-272.
 {¶ 24} Each of the three elements of the Fyffe test will be examined individually.
 {¶ 25} 1. Employer knew about a dangerous condition.
 {¶ 26} The first element of the Fyffe test requires the employee to prove that the employer possessed knowledge of a dangerous process, procedure, instrumentality, or condition within its business operations. In order to satisfy this element, the employee must demonstrate that: (1) a dangerous condition existed within the employer's business operations and (2) that the employer had actual or constructive knowledge that the dangerous condition existed. See Dailey v. EatonCorp. (2000), 138 Ohio App.3d 575, 581-582, 741 N.E.2d 946. The plaintiff must also establish that the condition presented a danger that, "falls outside the `natural hazards of employment,' which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures." Brookover v. FlexmagIndus., Inc. (Apr. 29, 2002), 4th Dist. No. 00CA49, at *14. In other words, the hazard must be above and beyond the general hazards of his or her employment, because otherwise it would be treated under the worker's compensation system.
 {¶ 27} The availability and use of safety features is part of the analysis in determining whether a dangerous condition existed. Lear v.Hartzell Hardwoods, Inc., 160 Ohio App.3d 478, 2005-Ohio-1907, ¶ 19. The use of safety features demonstrates an appreciation of the potential for danger and an *Page 12 
effort to avoid harm to employees. Bermejo v. StoneCo, Inc., 6th Dist. No. L-05-1229, 2006-Ohio-2486. "An employer simply cannot be held to know that a dangerous condition exists and that harm is substantially certain to occur when he has taken measures that would have prevented the injury altogether had they been followed." Robinson v. Icarus Indus.Constructing Painting Co. (2001), 145 Ohio App.3d 256, 262,762 N.E.2d 463.
 {¶ 28} There is a considerable amount of evidence in the record concerning whether a dangerous condition existed, and concerning the safety measures that Appellee took to alleviate the dangers. There is no question that mine work can be hazardous. The record reflects that there had been problems with air quality in the mine, which is why the crew members were required to carry oxygen detectors. Appellants rely primarily on the following conclusion of the MSHA report to attempt to show that there is a genuine issue of material fact concerning the dangerous air condition:
 {¶ 29} "The accident occurred because an oxygen deficient atmosphere was allowed to exist. The volume and velocity of air near the No. 12 seal was not sufficient to dilute, render harmless, and carry away noxious and harmful gases. A contributing factor to this accident was the slight downward drop of the atmospheric pressure. This may have allowed the oxygen deficient atmosphere behind the seals to migrate out towards the entry." (6/16/00 MSHA Report, p. 7.)
 {¶ 30} Obviously, an oxygen deficient atmosphere is dangerous if no measures are taken to avoid or counteract that oxygen deficiency. There is no *Page 13 
question, though, that Appellee took protective measures to deal with this problem. There is no dispute that Moore and the other crew members had oxygen detectors, were required to use them, were required to use 20-foot probes, and that these devices had been in working order prior to the accident. Moore himself was required to test the air quality before proceeding to work in a new area. The crew also had a number of SCSRs available in case of emergencies. The question here is not simply whether there was a danger in the workplace, but rather, whether there was a danger above and beyond the normal hazards of the work environment in light of the aforementioned safety measures. Again, the danger must be above and beyond the general hazard of Moore's job duties.
 {¶ 31} The specific hazard that caused Moore's injury was a sudden reduction of oxygen in the air in the specific area where he was working. Nothing in the MSHA report challenges that the aforementioned safety measures were taken by Appellee to remove the danger of low oxygen levels. In fact, Appellants' evidence assumes that these safety features were in place. It is very difficult to see how Appellants' evidence could overcome summary judgment on the first prong of theFyffe test.
 {¶ 32} 2. Employer knew that harm would be substantially certain tooccur.
 {¶ 33} The second prong of the Fyffe test requires the employee to establish that the employer possessed knowledge that, if the employee is subjected to the dangerous process, procedure, instrumentality or condition, *Page 14 
then harm to the employee will be a substantial certainty. A court can infer intent if the employer knows that the dangerous procedure or condition is substantially certain to cause harm to the employee. SeeHarasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175,551 N.E.2d 962.
 {¶ 34} Proof of the employer's negligence or recklessness is not sufficient to establish substantial certainty of injury. Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 484,696 N.E.2d 1044. As we made clear earlier, establishing that the employer's conduct was more than negligence or recklessness, "is a difficult standard to meet." McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 246,659 N.E.2d 317.
 {¶ 35} In its effort to define the lines between negligence, recklessness, and intent, the Ohio Supreme Court has noted: "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, 59 Ohio St.3d at 118, 570 N.E.2d 1108. *Page 15 
 {¶ 36} A foreseeable risk, in this context, is not one that is merely possible or probable, but rather, a highly probable risk of harm.Young, supra, 160 Ohio App.3d 495, 2005-Ohio-1795, 827 N.E.2d 852, at ¶ 29.
 {¶ 37} Certain types of facts and circumstances are particularly relevant in attempting to prove that an employer had knowledge of a high probability of harm. These include, inter alia, prior accidents of a similar nature, inadequate training, and whether an employer has deliberately removed or deliberately failed to install safety features. See Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 170,539 N.E.2d 1114; Vermett v. Fred Christen Sons Co. (2000), 138 Ohio App.3d 586,602, 741 N.E.2d 954; Page v. Taylor Lumber, Inc., 161 Ohio App.3d 644,2005-Ohio-3104, ¶ 14.
 {¶ 38} Appellee's unrebutted evidence shows that there were no accidents from the time Moore and his crew started work on February 15, 2000, until the date of his accident. Moore did not report any safety concerns to his superiors prior to the accident, and he was the crew foreman, i.e., the person responsible for the safety of the crew and for reporting safety issues. There is no question that the crew was qualified, and all parties agree with and emphasize the many years of experience of each member of the crew. In other words, the experience of the crew was itself an added safety measure. These are all facts that indicate a lack of foreseeable risk or substantial certainty of injury.
 {¶ 39} Instead of providing rebuttal evidence, Appellants argue that an employer intentional tort claim should not necessarily be dismissed simply *Page 16 
because there were alternative procedures for performing a dangerous task that the employee failed to use. Although this may be a valid point of law, Appellee has not argued that the intentional tort claim should be dismissed because the employee possessed alternative means to perform a dangerous task. Appellee argues that it did not know there was a hazardous condition in light of the safety measures in place. Although Appellee knew of the potential for low oxygen levels, it took steps to avoid injury from low oxygen levels, and the evidence shows that there were no injuries or reports of any safety issues until Moore was injured on May 8, 2000.
 {¶ 40} Furthermore, Moore's disregard of key safety features directly related to his accident prevents him from succeeding in this intentional tort claim. "[W]hen safety devices or rules are available but are ignored by employees, the requisite knowledge of the employer is not established." Robinson, supra, 145 Ohio App.3d at 262, 762 N.E.2d 463. It should be noted that the Robinson case also involved summary judgment in favor of the employer.
 {¶ 41} The record is clear that Moore disregarded two vital safety features that are directly related to his injuries. First, he failed to use the 20-foot oxygen probe to test the area of the mine he was entering. In fact, Moore's own deposition testimony indicates that he never used the 20-foot probe. (8/27/03 Deposition, p. 19.) Second, Moore should not have been in a prohibited area without first testing the air quality. Moore confirmed this safety measure in his deposition. (8/27/03 Deposition, p. 24.) Nothing in Appellants' rebuttal *Page 17 
evidence challenges the fact that Moore disregarded these safety features, and the failure to follow established safety measures is fatal to an employer intentional tort claim.
 {¶ 42} Various cases beyond Robinson, infra, further illustrate the role of safety equipment or safety procedures in an employer intentional tort case. "[T]here is nothing to indicate that the safety equipment * * * assuming it had been used, would not have been sufficient to prevent the employee's injuries. Thus, we find no error with the trial court's determination that, `[g]iven the availability of this protective clothing, it cannot be said that Defendants knew to a substantial certainty that an employee would be injured * * *.'" Foust v. MagnumRestaurants, Inc. (1994), 97 Ohio App.3d 451, 456, 646 N.E.2d 1150.
 {¶ 43} "The appellee's safety procedures cannot be expected to protect an employee who disregards them. The appellee instructed its employees on a daily basis to work only on the platform and placed supervisory personnel on the platform to remind employees to return to the platform should they stray away. Upon consideration of the safety efforts used by the appellee, it cannot be said that the appellee knew to a substantial certainty that an employee would be injured." Hutton v. Corcon Indus.Painting, Inc. (Mar. 29, 1993), 7th Dist. No. 91 C.A. 41, pp. 3-4.
 {¶ 44} There are three final comments that need to be made about Appellants' arguments dealing with the second prong of Fyffe. First, Appellants argue a number of times that Moore's lack of memory of the events on the day of the accident should be viewed in his favor to create material issues of fact. *Page 18 
Yet, despite the many gaps in Moore's memory, he was able to remember many relevant facts or events that undermine his own case. Moore testified in his deposition that he could not remember ever using the 20-foot probe that was an additional safety feature of the oxygen detector. (8/27/03 Deposition, p. 19.) He admitted he was in an area of the mine where he was not supposed to be. (8/27/03 Deposition, p. 24) Moore admitted that the safety features in the mine, including the emergency oxygen equipment, were stationed according to federal standards. (8/27/03 Deposition, p. 22.) He testified that his oxygen detector had worked properly in the past. (8/27/03 Deposition, p. 43.) He testified that he did not feel that there was a likelihood of injury in performing his work rehabilitating the mine. (8/27/03 Deposition, p. 34.) Thus, Moore's own testimony supports Appellee's motion for summary judgment.
 {¶ 45} Second, Appellants are asking this Court to use a lack of evidence, i.e., Moore's inability to remember certain other events on that day, to pile inference upon inference in order to create material issues of fact. Moore would have this Court infer from his memory lapse that he, in fact, properly used the oxygen detector, and then further infer that the oxygen detector failed, and then further infer that Appellee knew that the oxygen detector would fail. Since the burden of proof clearly rests on Appellants to set forth facts that could be reasonably viewed to support the elements of their claim, they were required to rely on more than inferences built on inferences, because the ultimate trier of fact would not have been permitted to rely on mere *Page 19 
inferences built upon inferences to rule in Appellants' favor.Nageotte v. Cafaro Co., 160 Ohio App.3d 702, 2005-Ohio-2098,828 N.E.2d 683, ¶ 51.
 {¶ 46} Third, it does not particularly matter if Moore did use the oxygen detector and it failed, because even under those circumstances Appellants would have needed to further prove that Ohio Valley Coal knew about some flaw in the oxygen detector that created a further danger, and then failed to do anything to minimize the danger. Appellants did not provide any evidence about the oxygen detectors, about their rate of failure, or about Appellee's knowledge of problems with the oxygen detectors (other than agreeing that no safety problems had ever been reported to Appellee). The record appears to support that the oxygen detectors were in working condition, that a 20-foot extension probe was provided to Moore, that he never used the probe, and that he performed the job from February 8, 2000, until the time of the accident without incident and without reporting any problems with the oxygen detector. Once again, Moore's inability to remember what happened during the day of the accident, while unfortunate, does not create a material issue of fact preventing the trial court from granting summary judgment to Appellee.
 {¶ 47} Appellants have failed to provide rebuttal evidence on this issue, and therefore, summary judgment was appropriate based on the second prong of the Fyffe test.
 {¶ 48} 3. Employee was required to do the task.
 {¶ 49} The third prong of the Fyffe test requires the employee to produce some evidence tending to show that the employer, despite its knowledge of the *Page 20 
dangerous condition and the substantial certainty of harm to its employees, continued to require the employee to perform the dangerous task. Young, supra, 160 Ohio App.3d 495, 2005-Ohio-1795, ¶ 25. For purposes of surviving a motion for summary judgment, it is not necessary for the employee to demonstrate that the employer ordered the employee to engage in the dangerous task. The employee may satisfy this element by producing, "evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Gibson v. Drainage Prod., Inc., 95 Ohio St.3d 171,2002-Ohio-2008, 766 N.E.2d 982, ¶ 24.
 {¶ 50} Appellee's evidence in this matter is completely unrebutted. Every affidavit, deposition and sworn statement in the record agrees that Moore and his crew did not have to perform work in the mine if any member of the crew determined that it was dangerous. (See, e.g., 9/4/03 Sworn Statement of Kevin Scott Roe, p. 17; 11/25/03 Taylor Affidavit; 12/1/03 Heidelbach Affidavit.) Moore's own deposition testimony confirms that he would never have worked in an area that he thought was unsafe, and that he could pull his crew out at any time and work in other areas of the mine. (8/27/03 Deposition, pp. 51-52.)
 {¶ 51} This statement of Joseph Smolina is typical of the other evidence dealing with this issue: "At no time did anyone in management of The Ohio Valley Coal Company require Randall Moore, or any employee, to enter into an area of the mine below safe oxygen levels. Randall Moore was responsible for checking the oxygen levels." (11/26/03 Smolina Affidavit, p. 2.) *Page 21 
 {¶ 52} The MSHA report is silent on this matter, and silence cannot be treated as rebuttal evidence. Therefore, we can find no evidence in the record challenging the fact that neither Moore nor his crew members were required to be anywhere in the mine if they thought the conditions were unsafe.
 {¶ 53} Appellants contend that they do not have to submit proof that Ohio Valley Coal required Moore to be in the hazardous area or perform the hazardous task in order to survive summary judgment. Appellants citeGibson, supra, 95 Ohio St.3d 171, 2002-Ohio-2008, in support: "it is not necessary for an employee to show that the employer expressly ordered the employee to engage in the dangerous task. Instead, the third element of the Fyffe test can be satisfied by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in that dangerous task." Id. at ¶ 24.
 {¶ 54} Although Gibson may have softened the third prong ofFyffe somewhat, it did not change the basic rules of civil law. Appellants were still required to provide evidence that a jury could rely on to establish the elements of their case. Ohio Valley Coal presented evidence that none of the four crew members were ever required to put themselves in harm's way in any part of the mine. Appellants presented nothing in rebuttal. Gibson continues to require an employee to present evidence that raises at least an inference that the employer required the employee to be exposed to the hazardous situation. Since Appellants did not present any such evidence, they failed to satisfy the *Page 22 
third prong of Fyffe, and for this reason, the trial court was correct in granting summary judgment to Appellee.
 {¶ 55} Since it is appropriate to grant summary judgment to the employer when any one of the three prongs of Fyffe are not met, and because Appellants have not raised a genuine issue of material fact under any of the three prongs of Fyffe, their second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. 4 {¶ 56} "THE TRIAL COURT ERRED BY APPLYING PRINCIPLES OF ASSUMPTION OF RISK AND COMPARATIVE NEGLIGENCE TO AN INTENTIONAL EMPLOYER TORT ACTION."
 {¶ 57} Appellants correctly argue that contributory or comparative negligence principles have no place in an intentional tort claim.Doyle v. Fairfield Machine Co., Inc. (1997), 120 Ohio App.3d 192, 212,697 N.E.2d 667. Appellants then accuse the trial court of relying on theories of comparative negligence and assumption of the risk, but there is no indication that these concepts were ever used in the trial court's judgment. At any rate, appellate review of summary judgment is de novo, and there is no need for us to refer to or rely on any supposed faulty reasoning of the trial court in determining whether summary judgment was appropriate in this case.
 {¶ 58} As Appellee points out, some aspects of a Fyffe analysis may seem similar to the type of reasoning that takes place under comparative negligence or assumption of the risk, but regardless of the similarities, the Fyffe analysis controls. In an employer intentional tort case, it is relevant whether the *Page 23 
employee failed to use established safety equipment and procedures, whether the employee had a choice in whether to be exposed to the hazard, or whether the employee reported prior safety concerns to the employer. These types of questions occur again and again in employer intentional tort cases and are proper factors to consider.McConville v. Jackson Comfort Sys., Inc. (1994), 95 Ohio App.3d 297,303, 642 N.E.2d 416; Foust v. Magnum Restaurants, Inc. (1994),97 Ohio App.3d 451, 456, 646 N.E.2d 1150. Appellants' fourth assignment of error is unpersuasive and is overruled.
 {¶ 59} In conclusion, Appellants did not set forth rebuttal evidence to support the three elements of the Fyffe case, and the failure of any one of the elements is sufficient to grant summary judgment to Appellee. Appellants also failed to show that the trial court committed any error in reversing its initial oral decision to overrule Appellee's motion for summary judgment. Finally, Appellants' argument that the trial court used inappropriate legal principles involving comparative negligence or assumption of the risk is incorrect, and even if true, would have been irrelevant based on our de novo standard of review. All four assignments of error are without merit, and the judgment of the Belmont County Court of Common Pleas is affirmed in full.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1