OPINION
{¶ 1} Plaintiffs-appellants, Carl and Betty Tucker, appeal from a Harrison County Common Pleas Court judgment awarding summary judgment in favor of defendants-appellees, Richard Huff and CRC Trucking, Inc (CRC).
 {¶ 2} CRC is a trucking business. Huff is CRC's sole shareholder. Tucker was an employee of CRC. Betty is Tucker's wife. On September 19, 2003, Tucker was injured when the dump truck he was operating tipped over while unloading.
 {¶ 3} Tucker sued CRC and Huff. He asserted claims for employer intentional tort and negligence. Tucker alleged that CRC and Huff failed to maintain their trucks in a safe condition. He claimed that CRC and Huff knew their trucks were dangerous and, nonetheless, subjected him to the dangerous condition where an injury was substantially certain to occur.
 {¶ 4} Specifically, Tucker asserted that CRC and Huff failed to grease and replace pins and bushings that were used in raising and lowering the bed of the dump truck. This failure, Tucker alleged, caused the bed of his truck to sway dangerously from side to side when it was lifted to the "dump" position. Tucker asserted that both he and at least one other employee brought this problem to CRC's and Huff's attention on numerous occasions but CRC and Huff failed to take any action to grease, repair, or replace the pins and bushings.
 {¶ 5} CRC and Huff each filed motions for summary judgment. In separate judgment entries, the court found that both CRC and Huff were entitled to summary judgment.
 {¶ 6} As to CRC, the trial court found that the record lacked any evidence that the maintenance failures alleged by Tucker resulted in tip-over accidents prior to his accident. It further found that while Tucker's expert witness referred to numerous safety requirements, his testimony did not establish that trailer pins are an item that are inspected or regulated by state or federal authorities. And it found that the record lacked any evidence that operating a truck with worn trailer pins is a dangerous condition that has a substantial certainty of causing harm. Therefore, the trial court concluded that CRC was entitled to summary judgment. *Page 2 
 {¶ 7} As to Huff, the trial court found Tucker did not present any evidence to "pierce the corporate veil" and hold Huff, the sole shareholder, personally responsible. Therefore, the court determined that summary judgment in favor of Huff was proper.
 {¶ 8} Tucker filed a timely notice of appeal from both judgments on October 12, 2007. He now raises a single assignment of error, which states:
 {¶ 9} "THE TRIAL COURT ERRED IN SUSTAINING SUMMARY JUDGMENT MOTIONS IN FAVOR OF THE EMPLOYER, CRC TRUCKING, AND THE OWNER, RICHARD HUFF."
 {¶ 10} In reviewing an award of summary judgment, appellate courts apply a de novo standard of review. Cole v. Am. Industries ResourcesCorp. (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ. R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v.Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated.Hoyt, Inc. v. Gordon Assoc, Inc. (1995), 104 Ohio App.3d 598, 603,662 N.E.2d 1088, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 11} Tucker breaks his assignment of error down into two issues. First, he asks:
 {¶ 12} "Did the trial court err in concluding that the plaintiff failed to present sufficient evidence that the employer, CRC Trucking, had knowledge that the plaintiff's defective dump truck created a substantial certainty of harm as required under Fyffe v. Jeno's,Inc., 59 Ohio St.3d 115, 570 N.E.2d 1108 (1992)?"
 {¶ 13} In Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, the Ohio Supreme Court set out the controlling common law test for employer intentional *Page 3 
tort as follows:
 {¶ 14} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. [1988],36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)" Id. at paragraph one of the syllabus.[1]
 {¶ 15} Tucker asserts that he presented evidence going to all threeFyffe elements.
 {¶ 16} As to the first element, Tucker points out that both he and another truck driver, Kevin Wilson, reported the dangerous condition with the pins and bushings to CRC. And he notes that Wilson even demonstrated the dangerous condition to CRC's mechanics by raising the bed of the truck and shaking it back and forth. Tucker argues that even though Huff denied having knowledge of this dangerous condition, this is an issue of fact that must be resolved in his favor.
 {¶ 17} Tucker had to demonstrate that a genuine issue of material fact existed as to whether CRC possessed knowledge of a dangerous process or procedure within its business operations. In order to do so, Tucker had to demonstrate that: (1) a dangerous condition existed within CRC's business operations and (2) that CRC *Page 4 
had actual or constructive knowledge that the dangerous condition existed. Moore v. Ohio Valley Coal Co., 7th Dist. No. 05-BE-3,2007-Ohio-1123, at ¶ 26.
 {¶ 18} Tucker stated in his deposition that he first complained about the worn pins and bushings on his trailer to both Huff and to Don Nattress, CRC's former owner who was still involved in the business, in May or June of 2000. (Tucker dep. 29). Tucker stated that he told the two men that his trailer needed new bushings in the back and the scope pins needed new bushings. (Tucker dep. 29). He stated that the men told him that they did not have the money to make the repairs and that he should "run it and be careful." (Tucker dep. 29). He stated that he told both Huff and Nattress that the worn-out bushings were unsafe. (Tucker dep. 30). Tucker testified that he continued to voice this same complaint once or twice a month from that time on. (Tucker dep. 30). However, Tucker stated that to his knowledge the bushings were never changed and the pins were never greased. (Tucker dep. 30-31).
 {¶ 19} Additionally, Kevin Wilson, Tucker's friend and co-worker, stated in his deposition that he demonstrated the problem with Tucker's truck to Huff on three separate occasions. (Wilson dep. 10). Wilson stated that with the bed empty, Tucker would lift the bed of the trailer up while Wilson grabbed it and moved it two feet in one direction and four feet in the other direction. (Wilson dep. 10). Huff agreed that if a trailer swayed more than six inches, it would be a problem. (Huff dep. 19). Wilson stated that he showed this problem to Nattress and Huff. (Wilson dep. 11). Furthermore, Wilson stated that two years before Tucker's accident, he told Nattress, Huff, and another mechanic that he saw Tucker's trailer sway to the side. (Wilson dep. 44). And Wilson stated that he told Tucker he should not operate his trailer unless CRC fixed it because it was unsafe. (Wilson dep. 44).
 {¶ 20} Huff was the only other witness to offer evidence on the element of dangerous condition and notice. As stated above, Huff agreed that a trailer swaying more than six inches was a problem. (Huff dep. 19). However, Huff stated that Tucker's trailer did not tilt dangerously to the side. (Huff dep. 18-19). He stated that *Page 5 
to his knowledge, Tucker's trailer was in good shape. (Huff dep. 25). He also stated that he greased the bushings on Tucker's trailer himself. (Huff dep. 12).
 {¶ 21} When determining whether summary judgment was appropriate, we must construe the evidence in the light most favorable to the plaintiff. In this case, Tucker presented evidence that having worn-out bushings and un-greased pins on a trailer was dangerous. Tucker and Wilson both stated that this condition was unsafe. Huff admitted that if a trailer swayed more than six inches, it was a problem. Wilson's testimony was that Tucker's trailer swayed as much as four feet. Additionally, although Huff denied any knowledge of the bushings/pins issue with Tucker's trailer, both Tucker and Wilson stated that they reported the condition to Huff and Nattress on numerous occasions spanning three years. Wilson even stated that he demonstrated the dangerous condition to Nattress and Huff. Huff denied this. However, the evidence is sufficient to create a genuine issue of material fact as to whether CRC, through Nattress and Huff, had notice of a dangerous condition with Tucker's trailer. Thus, Tucker satisfied the first Fyffe element for summary judgment purposes.
 {¶ 22} As to the second element, Tucker argues that the dangerous condition, in this case the worn and un-greased pins and bushings, affected his truck uniquely. He asserts that it was the bed of his truck that was the subject of multiple complaints, that swayed when raised, and was returned to the road for over three years despite the complaints that were raised. Tucker argues that CRC had knowledge of a substantial certainty of injury from six facts: (1) whenever the truck's bed was raised, it would sway; (2) Tucker and others reported this dangerous condition to CRC repeatedly; (3) Wilson demonstrated the risk to CRC mechanics when he manually showed them how the bed swayed up to four feet from center; (4) Huff acknowledged that if the bed swayed more than six inches, it would not be safe; (5) Wilson, who observed Tucker's truck immediately after the accident, stated that the pins were twisted and exposed; and (6) Lawrence Dean, Tucker's expert, testified that after the accident, all of the bushings had to be replaced as did the metal mount *Page 6 
that housed them, which was indicative of gross, long-term neglect.
 {¶ 23} Tucker had to present evidence creating a genuine issue of material fact as to whether CRC possessed knowledge that, if an employee was subjected to the dangerous condition, then harm to the employee was a substantial certainty. The Fyffe Court set out the requisite intent for an employer intentional tort. It held that the employer's intent must be more than negligence or recklessness. Fyffe, 59 Ohio St.3d at paragraph two of the syllabus. Instead, the requisite intent is present when the employer knows that injuries to employees are certain or substantially certain to occur and the employer nonetheless proceeds with the process, procedure, or condition. Id. "Mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. This is a very difficult standard to meet.
 {¶ 24} Even construing the evidence in the light most favorable to Tucker, he cannot demonstrate a genuine issue of material fact as to whether CRC was substantially certain that harm was going to occur to him or another employee due to the condition of the bushings and pins.
 {¶ 25} One of the items Tucker relies on to show that an injury was substantially certain to occur is his expert's testimony. Tucker points out that Lawrence Dean, a trucking expert, testified that after the accident all of the bushings had to be replaced and that the damage was so great that the metal mount which housed the bushings also had to be replaced. (Dean dep. 67-68). Tucker then asserts, "Dean testified this was evidence of gross, longterm [sic.] neglect." But Tucker's assertions as to Dean's testimony are misleading. Dean did not unequivocally state that the condition of the bushings after the accident was evidence of long-term neglect. Instead, he testified that he looked at an appraisal report from repairs on Tucker's truck. (Dean dep. 66). He stated that the report noted "Hoist, top and bottom pins" and "Hoist bottom mount." (Dean dep. 66). He then explained what this might mean:
 {¶ 26} "So since they had to change the hoist bottom mount would tell me *Page 7 maybe the bushings were wore so bad that it also wore into that mount so that the old mount would not accept new bushings, which would show real gross negligence as far as, you know, that it went that far, that it went clear through the bushings that you couldn't just take the bushing out and put new bushings in, that you had to change the whole mounts that held the bushings in place.
 {¶ 27} "Then again, you know, it could have been bent in thewreck, is the reason it was changed.
 {¶ 28} "I mean, it's — without seeing it, it's just real hard totell, but I'd say that it was wore clear through the bushings into the mount, is the reason it was changed." (Emphasis added; Dean dep. 67-68).
 {¶ 29} When we consider Dean's entire answer on the subject of why the mount that held the bushings in place had to be changed, it seems clear that he was not sure why the mount had to be changed. On one hand, he stated that it could have been because of gross neglect that the bushings wore through. On the other hand, he stated that it could have been bent in the accident. Dean stated that without seeing the truck, it was hard to tell what caused the mounts to have to be replaced. And he stated earlier in his deposition that he never saw Tucker's truck nor did he even see the actual repair order. (Dean dep. 16, 18).
 {¶ 30} Furthermore, the other items Tucker relies on to show a question of fact as to substantial certainty of harm do not do so. There is evidence that the bed of his truck swayed when raised. However, there is no evidence that this swaying would necessarily result in a tip-over of the entire truck. And while Huff admitted that a trailer swaying more than six inches was a problem, this does not amount to the same thing as an injury being "substantially certain to occur." Additionally, Wilson testified that when he saw Tucker's truck immediately after the accident, the pins were twisted and sticking out. (Wilson dep. 38). However, Wilson had no way of knowing if the pins were like that prior to the accident or if they were twisted and broken in the accident.
 {¶ 31} Moreover, Tucker stated that he reported the problem with the pins and *Page 8 
bushings in his trailer to CRC in May or June of 2000. His accident did not occur until September 2003. Thus, if Tucker's testimony is true, he operated his truck for over three years without incident even given the worn-out condition of his bushings and pins. This could be seen as evidence that an accident was not substantially certain to occur.
 {¶ 32} Certain facts and circumstances are particularly relevant in attempting to prove that an employer had knowledge of a high probability of harm, including prior accidents of a similar nature, inadequate training, and whether the employer deliberately removed or deliberately failed to install safety features. Moore, 7th Dist. No. 05-BE-3, at ¶ 37. In this case, there was no evidence that a similar accident had ever occurred at CRC, nor was there evidence of a "near miss" with a similar accident. Training was not an issue here. And there was no evidence that Tucker's truck was not equipped with the proper safety features. The issue here came down to the maintenance of Tucker's trailer. As the Ohio Supreme Court noted:
 {¶ 33} "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, * * * such conduct should not be classified as an `intentional tort.'"Van Fossen, 36 Ohio St.3d at 117.
 {¶ 34} While CRC's conduct in failing to replace the bushings and pins may have been negligent, reckless, or even wanton, Tucker did not present any evidence to show that injury was substantially certain to occur due to CRC's alleged lack of maintenance on his truck. No evidence existed that an intentional tort occurred here.
 {¶ 35} Since Tucker cannot meet the second Fyffe element, summary judgment in favor of CRC was proper. However, we will briefly address the third Fyffe element.
 {¶ 36} As to the third factor, Tucker points to his own deposition testimony. He stated that even though CRC was aware of the dangerous condition on his truck, *Page 9 
he was instructed to simply "run it and be careful." (Tucker dep. 29).
 {¶ 37} Tucker had to present evidence creating a genuine issue of material fact as to whether CRC, despite its knowledge of the dangerous process and the substantial certainty of harm to its employees, continued to require the employee to perform the dangerous task. In order to survive a summary judgment motion, the employee need not demonstrate that the employer ordered the employee to engage in the dangerous task. Moore, 7th Dist. No. 05-BE-3, at ¶ 49. Instead, the employee may satisfy this element by producing, "`evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task.'" Id., quotingGibson v. Drainage Prod., Inc., 95 Ohio St.3d 171, 766 N.E.2d 982,2002-Ohio-2008, at ¶ 24.
 {¶ 38} Here, Tucker testified that after informing Huff and Nattress that the bushings and pins on his trailer were worn, they told him to "run it and be careful." (Tucker dep. 29). Thus, it seems that CRC expected Tucker to continue to haul and dump his loads regardless of the condition of the bushings and pins on his trailer. For purposes of summary judgment, this evidence is sufficient to demonstrate that CRC required Tucker to operate his truck regardless of the condition of the bushings and pins in his trailer.
 {¶ 39} But because Tucker cannot demonstrate a genuine issue of material fact surrounding whether CRC knew or should have known that injury was substantially certain to occur, summary judgment in favor of CRC was proper.
 {¶ 40} Tucker's second issue asks:
 {¶ 41} "Did the trial court err in concluding that the plaintiff failed to present sufficient evidence that the defendant, Huff, as sole owner of the company and the one responsible for truck maintenance, personally engaged in tortious conduct?"
 {¶ 42} Here, Tucker points out that he alleged in his complaint that Huff was a tortfeasor and was liable for his own tortious acts. Therefore, he contends that the trial court's analysis under the piercing the corporate veil theory was misguided. Tucker points out that in addition to being CRC's sole shareholder, Huff worked as a *Page 10 
mechanic and was personally responsible for the day-to-day maintenance of the trucks. (Huff dep. 14, 41). He further points out Huff testified that he inspected, greased, repaired, and replaced pins and fittings on the trucks, including the fittings on Tucker's truck. (Huff dep. 12, 17-19). Tucker argues that because Huff was responsible for the maintenance of the trucks, it was Huffs' tortious conduct that caused his truck to tip over.
 {¶ 43} Tucker testified that he never worked for Huff individually, but only for CRC. (Tucker dep. 10-11). And Huff testified that CRC was a corporation where he was the sole owner. (Tr. 22-23).
 {¶ 44} A corporation is a separate and distinct legal entity from its shareholders even where the corporation has only one shareholder.Zimmerman v. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762, 771,675 N.E.2d 480. In order to hold the shareholder personally liable for alleged tortious conduct, and "pierce the corporate veil" the plaintiff must prove: "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere Condominium Unit Owners' Assn. v.R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 289, 617 N.E.2d 1075.
 {¶ 45} Tucker did not present evidence going to any of these elements. Thus, he cannot pierce the corporate veil that protects Huff. Instead, Tucker argues that Huff should be held personally liable as the mechanic who failed to properly maintain his truck. However, Tucker can present no theory under which Huff can be held personally liable for work he did as CRC's employee.
 {¶ 46} A corporate officer can be held personally liable for a tort committed while acting within the scope of his employment. Bowes v.Cincinnati Riverfront Coliseum, Inc. (1983), 12 Ohio App.3d 12, 18,465 N.E.2d 904. But the only theory under which Tucker could hold Huff personally liable would be if Tucker *Page 11 
demonstrated that Huff, in performing his mechanic's duties, was aware that by failing to grease or replace the bushings and pins on Tucker's truck an injury was substantially certain to occur. As discussed in detail above, there was no evidence that Huff knew or should have known that injury was substantially certain to occur. Thus, Huff cannot be personally liable in this case.
 {¶ 47} Accordingly, appellant's sole assignment of error is without merit.
 {¶ 48} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., concurs.
[1] It should be noted that the injury in this case occurred on September 19, 2003 and the complaint was filed on August 2, 2004. Thus, the common law test for employer intentional tort applies here. R.C. 2745.01, which became effective on April 7, 2005, codified the common law employer intentional tort action. This court found that statute to be unconstitutional in Kaminski v. Metal Wire Products Company, 7th Dist. No. 07-CO-15, 2008-Ohio-1521. However, because the cause of action in this case accrued prior to the enactment of the statute, no issue exists here regarding the statute. The common law test applies. *Page 1