OPINION
{¶ 1} Quentin A. Cottrell appeals from the grant of summary judgment by the Portage County Court of Common Pleas to Temple-Inland, Inc., d.b.a. Inland *Page 2 
Paperboard and Packaging, Inc., Hayward Gillespie, Austin Crane, and Eric Bissler on his employer intentional tort claim. We affirm.
 {¶ 2} September 29, 2003, Mr. Cottrell was working as the assistant operator of a Ward printer/slotter Model 17000 at Inland's facility in Streetsboro. The machine's internal designation at Inland was Machine No. EG-122. The EG-122 cuts, folds, glues and prints paperboard boxes in one operation. Mr. Cottrell had worked at the Streetsboro facility since September 2000. He had been the assistant operator on several machines similar in operation to the EG-122, but had only been assigned to that particular machine recently. He was being trained by the operator, Don Jones, to whose instructions he was subject.
 {¶ 3} For operation of the EG-122, paperboard is stacked into the pre-feeder, which sends individual sheets onto the feeder table, which then moves the sheets through rollers into the machine. The rollers are dangerous, creating what is termed a "nip point"; and, at the time of the accident, were guarded from the feed table by a green metal guard. Affidavit testimony of Mr. Jeffrey Sheldon, a longtime Inland employee, established that the guard between the feed table and rollers had been in place since the machine's delivery from its manufacturer, Ward Equipment, and that no safety device on the machine had ever been removed or altered by Inland.
 {¶ 4} The feeder table of the EG-122 has little holes, to create a vacuum to hold down the paperboard. When different sized paperboard is used, the operators of the EG-122 tape bits of scrap paperboard over exposed holes on the feed table, to help maintain a strong vacuum. This is a normal procedure on the EG-122; Mr. Jones, the operator of the machine the day of Mr. Cottrell's accident had done it many times; and, *Page 3 
Mr. Cottrell had performed similar procedures on other Inland machines. Both testified that they did not consider the procedure particularly dangerous.
 {¶ 5} Inland has an extensive safety program for its employees. At the time of his hiring, Mr. Cottrell was shown a series of safety videos. Feed rollers were identified as a danger point on the machinery, and employees were warned to keep their hands well-clear of their "nip points." Mr. Cottrell signed off on a document entitled "Safeguard Procedures," which stated that whenever an employee was to "perform a routine task in a potentially dangerous location, safeguarding is required," and that any machine was to be brought to a "complete stop." Inland has periodic safety meetings, and quizzes for its employees. In February 2003, Mr. Cottrell took a quiz on safety procedures, which established he knew machines were to be brought to a stop when performing routine procedures. Inland encourages its employees to report "safety anomalies."
 {¶ 6} September 29, 2003, Mr. Jones and Mr. Cottrell were working the 11:00 p.m. to 7:00 a.m. shift on the EG-122. Paperboard covering some of the vacuum holes on the machine's feeder table came loose; and, they stopped the feeder table to re-tape the holes. However, they did not stop the rest of the machine; and the rollers behind the green guard at the end of the table continued to spin. Mr. Cottrell got onto the feeder table to do some of the taping; when he started to climb off, he slipped, and his hand got caught in the "nip point" between the rollers, causing extensive and permanent damage.
 {¶ 7} As operator of the EG-122, Mr. Jones testified by way of deposition that Inland employees frequently cut corners by failing to turn off machines like the EG-122 when performing procedures like re-taping vacuum holes. However, he admitted that *Page 4 
no member of Inland's supervisory staff — including defendant-appellee Austin Crane, the shift supervisor, or defendant-appellee Hayward Gillespie, the plant superintendent — had ever encouraged or advised such "cutting corners." He further testified that, if Mr. Crane were nearby, he would have followed safety procedures by shutting down the EG-122.
 {¶ 8} September 25, 2005, Mr. Cottrell filed his action sounding in intentional tort against Inland and several of the Inland supervisors in the Portage County Court of Common Pleas. Extensive discovery was had; and, June 26, 2006, all defendants filed for summary judgment. On June 5, 2005, Mr. Jeremy Smith suffered a hand injury, evidently while working on a different portion of the EG-122. He filed an action in Cuyahoga County October 10, 2005. October 12, 2005, without responding to defendants' summary judgment motion, Mr. Cottrell voluntarily dismissed his Portage County action. Thereafter, by way of amended complaint, he joined Mr. Smith's action in Cuyahoga County. Inland and its defendant supervisors challenged the venue of the Cuyahoga action pursuant to Civ. R. 12(B)(3); and, February 7, 2007, the Cuyahoga County Court of Common Pleas ordered the action transferred to Portage County. Defendants once again filed for summary judgment; Mr. Cottrell opposed. September 28, 2007, the trial court granted summary judgment to all defendants, and against Mr. Cottrell.[1]
 {¶ 9} Mr. Cottrell timely noticed this appeal October 17, 2007. December 13, 2007, Mr. Cottrell moved to file an amended notice of appeal, in order to challenge the Cuyahoga County judgment entry transferring venue. Appellees opposed. By a *Page 5 
judgment entry filed December 19, 2007, we granted leave to file the amended notice of appeal. March 19, 2008, Mr. Cottrell moved to stay the proceeding between Mr. Smith and appellees pending in the trial court. Appellees opposed. By a judgment entry filed April 28, 2008, we denied the stay.
 {¶ 10} Mr. Cottrell assigns two errors on appeal:
 {¶ 11} "[1.] The trial court erred to appellants' (sic) prejudice by granting appellees' Motion for Summary Judgment * * *.
 {¶ 12} "[2.] The Cuyahoga County Court of Common Pleas Erroneously Granted Appellees' Motion to Transfer Venue * * *."
 {¶ 13} We consider the errors assigned in order.
 {¶ 14} "`Pursuant to Civ. R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293, * * *. `In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ. R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105, * * *.
 {¶ 15} "Accordingly, `(s)ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis of the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nomoving party's claim.'Brunstetter *Page 6 v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citingDresher at 292. `Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing Dresher at 293."
 {¶ 16} "* * *
 {¶ 17} "* * *
 {¶ 18} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and nonmoving party. In Dresher v. Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the *Page 7 
last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,
 {¶ 19} "The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, * * *, is too broad and fails to account for the burden Civ. R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity withMitseff. (Emphasis added.)
 {¶ 20} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)"Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 36-37, 40-42. (Parallel citations omitted.)
 {¶ 21} By his first assignment of error, Mr. Cottrell alleges the trial court erred in granting summary judgment to Inland and its supervisors on his employer intentional tort claim. The Supreme Court of Ohio set forth the elements of the tort at Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d, at paragraphs one and two of the syllabus: *Page 8 
 {¶ 22} "1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, * * *, paragraph five of the syllabus, modified as set forth above and explained.)
 {¶ 23} "2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. (Van Fossen v. Babcock *Page 9 Wilcox Co (1988), 36 Ohio St.3d 100, * * *, paragraph six of the syllabus, modified as set forth above and explained.) (Parallel citations omitted.)
 {¶ 24} "A plaintiff must satisfy all three prongs of theFyffe test, and a failure of proof with respect to any one prong will defeat the intentional tort claim." Moore v. The Ohio Valley CoalCo., 7th Dist. No. 05 BE 3, 2007-Ohio-1123, at ¶ 23; cf. Young v.Industrial Molded Plastics, Inc., 160 Ohio App.3d 495, 2005-Ohio-1795, at ¶ 19.
 {¶ 25} Regarding the first prong of the Fyffe test — i.e., knowledge on the employer's part of a dangerous condition — it seems clear that the operation of the EG-122 is dangerous, and that Inland knew this fact. Otherwise, there would have been no need for the elaborate safety procedures instituted by the company. However, Mr. Cottrell simply cannot point to any evidence going to the last two prongs ofFyffe.
 {¶ 26} Regarding the second prong of Fyffe — that the employer have knowledge that harm is substantially certain to occur if the employee is subjected to the dangerous condition or procedure — this court has held, "an employer is not liable for the injuries the employee suffered on an intentional tort theory where the employee voluntarily deviates from his employer's instructions or established operating procedure." Neal v.McGill Septic Tank Co. (Dec. 4, 1998), 11th Dist. No. 98-T-0022, 1998 Ohio App. LEXIS 5808, at 6-7; see, also, Moore at ¶ 40. In this case, Mr. Jones, the operator of the EG-122, and Mr. Cottrell, his assistant, clearly deviated from Inland's policy that machines be turned off when carrying out even routine activities near dangerous portions of the machinery — such as the "nip point" which crushed Mr. Cottrell's hand.
 {¶ 27} In effect, Mr. Cottrell wishes the trial court, and this court, to assume that Inland's safety procedure was an elaborate hoax, and that the company "winked" at its *Page 10 
employees admitted habit of not following safety procedures. There is no evidence of this. Mr. Jones testified that he would have turned off the machine, to carry out the re-taping procedure, if the shift supervisor, Mr. Crane, had been present. Mr. Cottrell further invites us to promote Mr. Jones' admitted flouting of company safety procedures to management policy, since he was required to follow Mr. Jones' instructions. However, the safety procedures at Inland encourage employees to point out problems: there is nothing to indicate the company would not have responded favorably if he had pointed out Mr. Jones' deviations from proper procedure to management.
 {¶ 28} Regarding the third prong of Fyffe — that the employer requires the employee to continue in carrying out the dangerous task — there is simply no evidence that Inland required Mr. Cottrell to work at the EG-122 without appropriate safety measures. Indeed, Mr. Jones' testimony that he would have turned the machine entirely off if the shift supervisor, Mr. Crane, had been present directly negates the third prong of Fyffe.
 {¶ 29} The first assignment of error lacks merit.
 {¶ 30} By his second assignment of error, Mr. Cottrell attacks the decision of the Cuyahoga County Court of Common Pleas to transfer venue of this matter to Portage County. As a multiple defendant case, venue in this case is controlled by Civ. R. 3(E), which provides, in relevant part:
 {¶ 31} "In any action, brought by one or more plaintiffs against one or more defendants involving one or more claims for relief, the forum shall be deemed a proper forum, and venue in the forum shall be proper, if the venue is proper as to any one party other than a nominal party, or as to any one claim for relief." *Page 11 
 {¶ 32} The decision to re-file this action in Cuyahoga County turned on the fact that Mr. Gillespie, Inland's plant superintendent, lives in the city of Solon, located in that county. As Mr. Cottrell points out, pursuant to Civ. R. 3(B)(1), venue is always proper in a county in which a defendant resides; as he further points out, the Supreme Court of Ohio has recently emphasized that forum non conveniens has no applicability to intrastate transfers of venue in Ohio, and a trial court must accept venue, if it is proper under Civ. R. 3. Cf. State ex rel. Smith v.Cuyahoga Cty. Court of Common Pleas, 106 Ohio St.3d 151, 2005-Ohio-4103.
 {¶ 33} Appellees make three counterarguments. First, they note that Mr. Cottrell only assigned the Cuyahoga County court's transfer of venue order as error by way of his amended notice of complaint. They consider that our jurisdiction fails on this issue, since the amendment was made outside the thirty day time limit for noticing appeals. App. R. 4(A).
 {¶ 34} This argument must fail. We are aware that certain courts of appeal have held that failure to designate all the judgments appealed from deprives an appellate court of jurisdiction to consider those errors contained in those judgments, pursuant to App. R. 3(D). See, e.g.,State v. Evans (Aug. 15, 2001), 7th Dist. No. 99-BA-66, 2001 Ohio App. LEXIS 3777, at 4-5. However, App. R. 3(F) confers discretion upon Ohio's appellate courts to give leave to amend notices of appeal; and the Supreme Court of Ohio has clearly held that the only jurisdictional requirement relating to notices of appeal is that they be timely filed, pursuant to App. R. 3(A) and 4. See, e.g., Transamerica Ins. Co. v.Nolan (1995), 72 Ohio St.3d 320, 322. As judgments concerning transfer of venue are only final and appealable when the case is decided on the merits, Timson v. *Page 12 Young (1980), 70 Ohio App.2d 239, we deem we have discretion to consider such an interlocutory order, even if it is only raised by way of an amended notice of appeal. Transamerica Ins. Co. at 322; App. R. 3(F).
 {¶ 35} Second, appellees contend that the judgment transferring venue remains interlocutory, as Mr. Smith's claims against them remain pending in the trial court. We reject this argument. Insofar as Mr. Cottrell's claims were made final and appealable by the trial court pursuant to Civ. R. 54(B), so was the judgment transferring venue. It would be a remarkable waste of the time and efforts of the litigants, as well as all the courts involved, if we failed to address this issue now, if only to provide direction regarding Mr. Smith's claims.
 {¶ 36} Finally, citing to Section 3(B)(2), Article IV, Ohio Constitution, appellees note our power to affirm, reverse, or modify judgments is limited to tribunals within this district. Consequently, they contend we are without power to consider a judgment transferring venue issued by a trial court outside this district, such as Cuyahoga County Common Pleas.
 {¶ 37} We agree that we cannot constitutionally consider judgments of tribunals not within the limits of this appellate district. However, if appellees' particular logic were applied, then orders transferring venue could never be appealed, as they only become ripe for review when the case transferred reaches final judgment. This makes no sense. Rather, we agree with the Fifth Appellate District's conclusion in Pasco v.McCoy (Jan. 30, 1995), 5th Dist. No. 94-CA-0248, 1995 Ohio App. LEXIS 353. In that case, appellant filed a civil action against appellees in the Stark County Court of Common Pleas, which transferred venue to the Ottawa County Court of Common Pleas *Page 13 
on appellees' motion. Id. at 1. That court rendered judgment in favor of the appellant against all defendants; whereupon the appellant noticed appeal to the Fifth District, regarding the judgment of Stark County Court of Common Pleas transferring venue. Id. at 1-2. The Fifth District concluded it could not consider the issue, because that would require it to review the final order of the Ottawa County trial court. Id. at 2. Rather, the Fifth District held the issue of venue should be raised by way of appeal to the court of appeals for Ottawa County, which, if it found the transfer was error, could then vacate the judgment of the court below it, and require entry of a judgment by that court re-transferring venue to Stark County. Id. at 2-3.
 {¶ 38} Consequently, we deem the propriety of the transfer of venue issue is properly before us on this appeal.
 {¶ 39} We review judgments transferring venue for abuse of discretion.Sharma v. Hummer (Apr. 27, 2001), 6th Dist. No. WD-00-047, 2001 Ohio App. LEXIS 1957, at 5. An abuse of discretion is no mere error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the phrase connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Therefore, "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g., State v. Ferranto (1925), 112 Ohio St. 667, 676-678.
 {¶ 40} Civ. R. 3(E) directs that venue in multiple party or claim cases is proper, "if the venue is proper as to any one party other than a nominal party, or as to any one claim for relief." Mr. Cottrell's filing of this case in Cuyahoga County was based solely on Mr. Gillespie's residence there. Thus, if Mr. Gillespie is merely a "nominal party," the *Page 14 
transfer of venue was proper. If he is not a "nominal party," then the judgment transferring venue was an abuse. Cf. State ex rel. Smith, supra.
 {¶ 41} The term "nominal party," as used in Civ. R. 3(E), is not defined by the rule, nor do we find any case law defining it. Words used in the rules of procedure are to be given their "plain and ordinary" meaning, if not otherwise defined. State ex rel. Law Office of thePublic Defender v. Rosencrans, 2d Dist. No. CA20416, 2005-Ohio-6681, at ¶ 18. Webster's II New College Dictionary (1999) 742 provides, in relevant part: "nominal * * * 2. Existing in name only and not in reality. 3. Small: trifling * * *." Therefore, for purposes of Civ. R. 3(E), it may be said that a "nominal party" is one whose presence in the action is either: (1) merely formal; or, (2) unnecessary for a just and proper resolution of the claim(s) presented. Particularly in the second situation, a factual inquiry may be necessary to determine whether a party is merely "nominal" for purposes of Civ. R. 3(E).
 {¶ 42} Applying this standard, we find that Mr. Gillespie is merely a "nominal party" in Mr. Cottrell's employer intentional tort action. The evidence in this case shows that he was not at the Streetsboro facility at the time of Mr. Cottrell's injury; that he had not participated in training Mr. Cottrell in any fashion; that he had never told any employee to bypass safety procedure, and was unaware that employees occasionally did so. His presence as a defendant would not be necessary, factually or legally, for Mr. Cottrell to obtain relief against Inland on his intentional tort claim.
 {¶ 43} Since Mr. Gillespie is merely a nominal party to this action, there was no abuse of discretion in transferring venue of this action to the Portage County Court of Common Pleas. *Page 15 
 {¶ 44} The second assignment of error lacks merit.
 {¶ 45} The judgment of the Portage County Court of Common Pleas is affirmed.
 {¶ 46} It is the further order of this court that appellant is assessed costs herein taxed.
 {¶ 47} The court finds there were reasonable grounds for this appeal.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concurs.
[1] The trial court's judgment entry included appropriate language to make it appealable pursuant to Civ. R. 54(B). The action between Mr. Smith and the various defendants continued in the trial court. *Page 1